0455

W. E. GILBERT & ASSOCIATES, Respondent, v. The
SOUTH CAROLINA NATIONAL BANK, Appellant.

(330 S. E. (2d) 307)

Court of Appeals

*L. Henry McKellar*, and *Manton M. Grier* and *Elizabeth A. Carpentier*, of *Boyd, Knowlton, Tate, & Finlay*, Columbia, *for appellant.*

*J. Kendall Few*, Greenville, *for respondent.*

Heard Jan. 24, 1985.

Decided April 30, 1985.

BELL, Judge:

W. E. Gilbert & Associates sued South Carolina National Bank for breach of an alleged contract for construction management services. The jury returned a verdict of $47,500 in Gilbert's favor. The Bank appeals. We reverse.

In early 1981 the Bank had developed a construction program it tentatively planned to implement over the ensuing year and a half. Although the Bank has an in house division to supervise small and medium sized projects, members of that department felt that significant costs could be saved if a construction manager were retained to supervise larger projects. Several firms were invited to submit their qualifications for the position. After interviewing five firms, the Bank selected Gilbert. Another firm was chosen as an alternate in case no agreement was reached with Gilbert.

To avoid conflicts of interest, Gilbert formed a second corporation, Gilbert CM, Inc., to handle construction management services for the Bank and other clients. Gilbert CM immediately began work on two branch offices for which the Bank had set early deadlines. A contract was executed between Gilbert CM and the Bank for these two projects, and negotiations continued toward an overall contract for the entire construction program. Three months after it had selected Gilbert, the Bank terminated their relationship for reasons not apparent from the record. Gilbert filed this lawsuit seeking damages for breach of an alleged contract between it and the Bank.[1]

---

[1] Gilbert CM instituted a separate lawsuit seeking damages for breach of the Lower Richland-Eastgate contract. That action was dismissed with prejudice on Gilbert CM's motion.

No formal contract for overall construction management services was executed between the Bank and Gilbert. On appeal, the Bank argues that no contract exists as a matter of law or, alternatively, that if an agreement was reached between the parties it is unenforceable because of the statute of frauds. Gilbert maintains that by piecing together a brochure it had prepared, the Bank's selection letter of March 18, Gilbert's letter of April 16, and the AIA form contract for the Lower Richland and Eastgate branches, sufficient memoranda exist to establish all essential elements of the overall contract and to satisfy the statute of frauds. The Bank raised its points at the appropriate stages of trial by motions for nonsuit, directed verdict and judgment *n.o.v.*

In deciding these motions, the trial judge must consider the evidence in the light most favorable to the non-moving party. If there is no evidence to support an essential element of the plaintiff's cause of action, the case should not be submitted to the jury, and a verdict in the plaintiff's favor will not be permitted to stand. *Stanley Smith & Sons v. Limestone College*, 322 S. E. (2d) 474 (S. C. App. 1984).

To recover in an action for breach of contract, the plaintiff must, of course, prove the existence of a contract, oral or written. *Stanley Smith & Sons v. Limestone College, supra.* "Where, as here, the material facts concerning the formation of an alleged contract are not in dispute, the issue of contract *vel non* is a question of law." *Valjar, Inc. v. Maritime Terminals, Inc.*, 220 Va. 1015, 1018, 265 S. E. (2d) 736 (1980).

Mutual assent to all the essential terms of the agreement is necessary to the formation of a contract. *Edens v. Laurel Hill, Inc.*, 271 S. C. 360, 247 S. E. (2d) 434 (1978). In a contract for services two essential terms are the scope of the work to be performed and the amount of compensation. *Farr v. Barnes Freight Lines*, 97 Ga. App. 36, 101 S. E. (2d) 906 (1958).

Gilbert's brochure contained no fee proposal, only a method by which clients are billed. This method in turn depended upon a determination of the scope of services involved. The Bank's March 18 letter likewise of-

fered no information on either scope of work or compensation. It stated in part:

> I'd like to meet with you during the first week of April to discuss the entire scope of this project and to negotiate specific charges and services to be rendered. In my view, the results of this meeting should be drafted into a contract which will become the basis of our association during the next year and a half. Any ideas you may have about this arrangement would be appreciated before the April Board meeting.

On its face this letter merely invited Gilbert to negotiate these two issues. Similarly, Gilbert's letter of April 16 only proposed a fee schedule. That schedule left compensation for smaller projects to be negotiated in the future. These three documents indicate that the Bank and Gilbert were negotiating; they do not prove agreement to the essential terms of a contract. *Valjar, Inc. v. Maritime Terminals, Inc., supra;* see *McLaurin v. Hamer,* 165 S. C. 411, 164 S. E. 2 (1932).

Charles Davis, head of the Bank's department which oversees construction projects, testified that before a decision could be made whether to use Gilbert CM for a particular project, the project would have to be "costed out" to determine if it could be done more cheaply in house. Bill Gilbert, president of both W. E. Gilbert & Associates and Gilbert CM, acknowledged that the Bank would require an overall contract that specified both the minimum size project Gilbert CM would work on and a fee schedule satisfactory to both parties.

Gilbert argues that by executing the contract for the Lower Richland and Eastgate projects, the Bank assented to the terms of Gilbert's April 16 letter, since the compensation in the contract arguably was computed on the basis of the fee schedule proposed in the letter. The letter summarized a conversation between Davis and Bill Gilbert on April 14, in which they had discussed certain particulars of an overall agreement. It specifically refers to "negotiations" over "proposed" items. Nowhere in the letter or in the AIA form contract is there any reference to which projects Gilbert would work on under an overall contract. There is simply no evidence in the record that the

■ parties ever agreed to the size or number of projects for which the Bank would require construction management services, nor that they reached final agreement with respect to compensation. Since these were essential elements of any overall agreement between the Bank and Gilbert, no contract existed as a matter of law. Thus, Gilbert is not entitled to recover on a theory of breach of contract.

Since we have concluded that no contract was made between the parties, we need not reach the statute of frauds issue. For the foregoing reasons, the judgment of the circuit court is

Reversed.

SANDERS, C. J., and GARDNER, J., concur.