**SOUTHERN RAILWAY COMPANY, Plaintiff,**

v.

**STRACHAN SHIPPING, a corporation, Defendant.**

**Civ. A. No. 2:84–2289–1.**

United States District Court, D. South Carolina, Charleston Division.

Nov. 26, 1985.

William H. Grimball, and Frank Grimball, Charleston, S.C., for plaintiff.

Marvin D. Infinger, Sinkler, Gibbs & Simons, Charleston, S.C., and Abda Lee Quillian, Savannah, Ga., for defendant.

## ORDER AND JUDGMENT

HAWKINS, District Judge.

Southern Railway Company ("Southern") brings this action against Strachan Shipping ("Strachan") for detention and repair charges on three containers because of Strachan's alleged use of the same. Southern contends that Strachan is responsible for these payments pursuant to certain "Trailer Use Agreements" between the two parties. Strachan answered the Complaint denied liability, asserting that it had no contractual relationship with Southern.

The case was heard without a jury on November 12, 1985. For the reasons stated below, this Court is of the opinion that Southern is not entitled to the detention and repair charges sought. Pursuant to F.R.C.P. 52(a), the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Southern Railway Company is a corporation organized under the laws of the Commonwealth of Virginia, with its executive offices in Atlanta, Georgia.

2. Strachan Shipping Company is a corporation organized under the laws of the State of Georgia, with its principal place of business in Savannah, Georgia. The Defendant maintains an office and transacts business in Charleston, South Carolina.

3. Strachan serves as agent for various steamship lines. As agent, Strachan books cargo space on vessels for shippers and/or consignees of goods to be carried aboard ocean-going vessels.

4. In the present circumstances, Strachan was contacted by Coltex Disc Corporation of Charlotte, North Carolina, ("Coltex") to reserve cargo space on an ocean-going vessel, the SS ISLA PUNA sailing for Guayaquil, Equador. Strachan was contacted by Coltex because it was acting as steamship agent for the vessel ISLA PUNA, and her operator, Transportes Navieros Equatorianois ("Trans Nave"). The space to be reserved was to be sufficient to accomodate three 40 ft. containers. The shipping instructions received from Coltex,

Defendant's Exhibits 1, 2, and 3, describe the containers which serve as the subject of this litigation being trailer numbers RRFX–294629, REAZ–251662, and REAZ–255287. The instructions note the shipping destination as Guayaquil, Equador, and describe the consignee as Fabrica de Tejuidos de Punto Alfatez, S.A., Casilla 3866 Guayaquil, Equador. Additionally, the instructions provide that inland and ocean freight along with other incidental charges arising from the shipment were to be for Coltex's account.

5. The trailers were carried from Charlotte to Charleston by Southern under three separate Way Bills of Lading. The Way Bills were prepared by Southern which named Strachan as consignee. The Way Bill under which trailer RRFZ–294629 was shipped noted as consignee "Strachan Shipping, Columbus Street Terminal for Steamship 'Isla Puna', Charleston, S.C."

6. The containers arrived in Charleston at Southern's piggyback yard in the north area, which yard was operated for Southern by its independent contractor. Upon the arrival of each container, Strachan Shipping was notified, consistent with Southern's Way Bills issued as an incident to the carriage of these trailers from Charlotte to Charleston. For each container at such time as Strachan was notified, it engaged a drayman on behalf of the steamship line, to deliver the trailers by truck from the piggyback yard to the Columbus Street terminal of the South Carolina State Ports Authority for loading aboard the vessel ISLA PUNA.

7. It appears that the containers had been leased by Coltex from Southern or some other party. In any event, Strachan in no way contracted for or arranged for the use of these containers for the shipment of the goods therein contained. Coltex or someone acting on its behalf had made these arrangements.

8. Upon delivery of the trailers at the piggyback yard, the draymen receipted for the trailers on each occasion by virtue of a document entitled "Trailer Use Agree-

ment". These documents, offered as Plaintiff's Exhibits 13, 14, and 15 were printed by Southern and prepared by its contractor at the piggyback yard. On each of the documents receipting for the three trailers, Strachan was noted as the "user". There were so noted by virtue of Strachan having been designated as consignee on Southern's Way Bills of Lading under which the trailers were shipped from Charlotte to Charleston. Strachan had no role in preparing these Way Bills or "Trailer Use Agreements" or in providing input for their preparation. Each "Trailer Use Agreement" is signed by the individual driver on behalf of the drayman employed. Thus, for trailer number RRFZ–294629, John Ward, an employee of the drayman involved for that particular trailer, GFC, signed for it on behalf of GFC. Similarly, for containers number REAZ–2251662 and REAS–2552787, the driver signed for the trailers on behalf of the drayman responsible therefore, Mercury Motors.

9. It is upon these Trailer Use Agreements that Southern bottoms its claim against Strachan in this case, alleging that the documents created a contractual relationship between the parties. The Trailer Use Agreements contain the following provisions:

It is understood and agreed by and between the user designated above and the Southern Railway Company (hereinafter referred to as "Railroad") that the use of the equipment described herein is made in accordance with, and is subject to, the terms and conditions printed on the reverse side of this sheet, and to the provisions of any applicable tariff on file either with the Interstate Commerce Commission or with any other regulatory agency having jurisdiction.

On the reverse side, the following is contained:

... (ii) The User shall pay rental for the use of the equipment described on the reverse side in accordance with the provisions of the applicable tariff or tarriffs on file with the Interstate Commerce Commission or other regulatory agency having jurisdiction in the premises, if any.

10. With reference to the Trailer Use Agreements in question, Strachan received only a xeroxed copy of the front portion thereof. It did not receive a copy of the reverse side until after instant litigation started.

11. The Trailer Use Agreement as to trailer number RRFX–294629 was dated December 18, 1983; with regard to Trailer numbers REAZ–251662 and REAZ–2552787, the applicable "Trailer Use Agreements" were dated January 6, 1982.

12. Shortly after the Trailer Use Agreements were delivered to the draymen and deposited at Columbus Street, they were loaded on the vessel ISLA PUNA and sailed for Guayaquil, Equador. For reasons not established at trial, the containers were temporarily lost or detained in Equador. They eventually made their way back to New York on May 11, 1983, where they were ultimately claimed by Southern. As a result of this delay in return of the containers, Southern claims detention charges for 485 days for containers REAZ–251662 and REAZ–2552787 and for 505 days for trailer RRFZ–294629. Southern bottoms its charges on the Trailer Use Agreement which allegedly incorporates a document, alleged to be a tariff, entitled, "Rules Applying in Connection with Trailer on Flat Car (TOFC) and Containers on Flat Car (COFC) Transportation Via Southern Railway Company and Affiliated Lines". This document was introduced by Plaintiff as its Exhibit No. 32. With regard to the "tariff", it is important to note the following:

a. There was no evidence that the tariff was filed with the Interstate Commerce Commission or any other appropriate regulatory agency.

b. There was no evidence that the detention charges were required by law to be included in the tariff even if the tariff had been filed.

13. Using Exhibit No. 32, Plaintiffs figured detention and repair charges in the amount of $46,225.70 to be owing Southern from Strachan.

## CONCLUSIONS OF LAW

(a) This Court has jurisdiction over the subject matter of this action by virtue of 28 U.S.C. §§ 1332 and 1337.

■ (b) The Trailer Use Agreements do not constitute a valid and binding contractual relationship between Strachan and Southern for the following reasons:

It is cardinal that an enforceable contract cannot exist where there is no meeting of the minds as to a vital term of the contract such as price or remuneration. *W.E. Gilbert & Associates v. S.C. Nat'l. Bank*, 330 S.E.2d 307 (S.C.App.1985). Here, Southern seeks to impose damages based on the Trailer Use Agreement in conjunction with the provisions of its tariff, Plaintiff's Exhibit No. 32. There was no evidence at trial of actual notice of the provisions of the tariff which were relied upon to establish the charges sought to be charged against Strachan. Without actual notice on the part of Strachan, constructive notice must be relied upon by Southern to establish the binding nature of the tariff provisions on Strachan. However, there was no evidence that the tariff was filed with the Interstate Commerce Commission or any other regulatory body with jurisdiction over Southern. Southern's witness called on the point testified he did not know if it had been filed. Filing is the sina quo non of constructive notice in this context. Indeed, the Trailer Use Agreements indicate that it is subject to the provisions of any applicable tariff "on file . . .". The failure to prove filing is fatal to Plaintiff's claim.

Even if the tariff had been filed, there is no constructive notice as to provisions not required by law to be included in the tariff and filed with the appropriate regulatory commission. In *LaSalle Mach. Tool, Inc., v. Maher Terminals, Inc.*, 611 F.2d 56 (4th Cir.1979), it was conceeded that no actual notice of the provisions had been given LaSalle, the party sought to be charged with the terms of the tariff there at issue. In addressing the issue of constructive notice to LaSalle, the Court noted:

Nor is there any basis for imputing constructive knowledge of the tariff's provision to LaSalle. Maher argues that the filing of the tariff with the FMC gave the public constructive notice of the liability limitations contained in it. But it is well established that the *filing* of a tariff gives constructive notice only to those terms which were *required* by law to be filed. (Citation omitted, emphasis added). Page 60.

Here Southern's own witnesses indicated that the detention charges or trailer use charges applied to the rental of the trailer as equipment only, and not for the carriage or moving of goods for which there is a freight or rates for transportation charge. As appears from 49 U.S.C. § 10762(a)(2), (b)(1), only transportation charges and terminal charges are required to be filed by statute. Indeed the term "rate" is defined as a charge for transportation under the act, see 49 U.S.C. § 10102(20).

There is no basis, therefore, for concluding a contract in the circumstances. There was no meeting of the minds as to the vital term thereof, detention charges, because of lack of notice thereof by Strachan. The contract, therefore, must fail. *W.E. Gilbert & Associates, supra.*

■ (c) Alternatively, although not vital to the Court's decision, Strachan is absolved from liability in that it was acting as agent for a disclosed principal in this matter. Plaintiff's Exhibit No. 5, the Way Bill of Lading under which one of the trailers was shipped and which was prepared by Southern, indicated that Strachan was consignee at Charleston for purposes of loading the trailer on board steamship ISLA PUNA. Additionally, Southern's witnesses testified that they were familiar with Strachan's business as that of steamship agent, which acted on behalf of steamship lines and the vessels operated by them. In such circumstances, one in the position of Strachan is absolved of liability. See *TTT Travel Services, Inc., v. Rogers Terminal & Shipping Corp.*, 1983 A.M.C. 2597 (ED. L.A.1983).

Strachan Shipping Company is entitled to judgment in its favor. It is, therefore,

ordered that the Clerk enter judgment in favor of Strachan Shipping Company and that Southern Railway Company take nothing on its claim.

AND IT IS SO ORDERED.