Don E. BEKEN, Plaintiff,

v.

Ronald EAGLIN, individually and as Chancellor of Coastal Carolina College of the University of South Carolina; and James Rex, individually and as former Vice–Chancellor of Coastal Carolina College of the University of South Carolina, Defendants.

No. 4:89–0194–15.

United States District Court, D. South Carolina, Florence Division.

April 20, 1989.

Ray P. McClain, Charleston, S.C., for plaintiff.

Vance J. Bettis, Gignilliat, Savitz & Bettis, Columbia, S.C., for defendants.

## ORDER

HAMILTON, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction. Plaintiff, a nontenured, probationary faculty member at Coastal Carolina College of the University of South Carolina (USC–Coastal Carolina or College), is challenging the nonrenewal of his annual teaching contract. The defendants are Ronald Eaglin, Chancellor of USC–Coastal Carolina, and James H. Rex, Vice–Chancellor for Academic Affairs at USC–Coastal Carolina.[1] In his complaint, plaintiff alleges under 42 U.S.C. § 1983 that his nonreappointment to the faculty of USC–Coastal Carolina resulted from his opposition to a core curriculum proposal of the College administration and his involvement with the USC–Coastal Carolina Chapter of the American Association of University Professors (AAUP) and that his nonreappointment denied him a constitutionally cognizable property interest without due process. In addition to his two federal claims, plaintiff alleges pendent

---

1. On motion of the plaintiff made in open court on March 23, 1989, and with the consent of the remaining parties, the defendant University of South Carolina was dismissed as a party defendant.

state law claims for breach of contract and misrepresentation.

Plaintiff thereafter filed a motion for preliminary injunction in which he seeks an order directing the defendants to extend his faculty appointment through the 1989–90 academic year. On March 23, 1989, the court heard testimony and considered affi-davits offered by the parties in support of their respective positions. For the reasons that follow, the court has concluded that this action must be dismissed for lack of subject matter jurisdiction.

The testimony and other evidence properly before the court reflect that plaintiff holds a probationary appointment as a full-time assistant professor of mathematics at USC–Coastal Carolina. He was hired on August 16, 1983. Under USC–Coastal Carolina's policies, a full-time faculty member hired at the rank of assistant professor serves in a probationary status from year-to-year not to exceed seven (7) years. In other words, the maximum probationary period for a faculty member hired at USC–Coastal Carolina at the rank of assistant professor is seven (7) years. The relevant policy provides:[2]

> [t]he maximum probationary period of full-time faculty hired at the rank of Assistant Professor or Assistant Librarian is seven years of continuous service with the college.

> The Vice–Chancellor for Academic Affairs will notify, in writing, tenure eligible faculty members in their fifth year to prepare tenure application files. Files are traditionally submitted in the fall of the sixth year. A decision will be made by the Board of Trustees in the summer preceding the seventh year. If tenure is not awarded, the seventh year will be the final year of employment.

Faculty manual, p. 36, para. e. Termination of probationary faculty may occur

2. Plaintiff contends that defendants, whenever attempting to terminate a probationary employee, are required to follow procedural guidelines promulgated by the AAUP in 1971 entitled "Statement of Procedural Standards in the Renewal or Nonrenewal of Faculty Appointments." Although plaintiff concedes these advisory guidelines are not binding on any particular college or university, he nevertheless argues that defendants are obligated to follow these recommendations because of a reference to them contained in the USC–Coastal Carolina faculty manual (faculty manual).

It is undisputed that each college or university within the University of South Carolina system is vested with the responsibility to develop its own tenure and promotion policies and procedures. According to faculty regulations applicable to all such institutions, "[t]he ... Four–Year Campuses develop their own tenure and promotion policies and procedures. These policies should adequately reflect the spirit of the Columbia campus policy...." Obviously, premised upon this grant of discretion to the local administration, the USC–Coastal Carolina faculty manual provides that the College *generally adheres* to the advisory standards promulgated by the AAUP. Nevertheless, where USC–Coastal Carolina policies differ from those standards, according to the faculty manual, they, not AAUP guidelines, control. According to the faculty manual (emphasis added):

Coastal Carolina College of the University of South Carolina *generally adheres* to the standards of the American Association of University Professors regarding the rights, privileges and benefits accorded faculty members. Where University policies differ from those standards, the regulations stated herein or as subsequently modified by the College shall apply. Consequently, *where USC–Coastal Carolina policies differ from AAUP standards, as expressed in the faculty manual, University regulations control.*

In any event, the faculty manual clearly and unambiguously provides that probationary faculty may be terminated if "it is deemed in the best interest of the College to terminate the appointment." p. 36, para. j. Apparently due to the substantial measure of discretion this provision accords College officials in terminating nontenured, probationary employees, the faculty manual requires that employees who have served more than two years in probationary status be given at least twelve (12) months notice prior to nonreappointment. Because these provisions specifically address the nonreappointment procedure, they override AAUP advisory guidelines which also address that subject. Indeed, the precatory rather than mandatory language purporting to incorporate the AAUP guidelines ("generally adheres") and the disclaimer language found immediately thereafter both reveal that no contractual rights or obligations, much less procedural due process guarantees, were intended to flow from these provisions. *See infra* pp. 868–869. Notably, while the Court in *Board of Regents v. Roth* was cognizant of the advisory guidelines periodically promulgated by the AAUP, 408 U.S. 564 at 578 n. 17, 92 S.Ct. 2701 at 2710 n. 17, 33 L.Ed.2d 549, (1972) it declined to afford them constitutional significance.

prior to consideration of tenure, however. The pertinent policy provides:

[i]f, during the first year of probationary appointment, it is deemed in the best interest of the College to terminate the appointment at the end of the first year, notice of such termination will be given by March 1 (July 1 for a second semester appointment).

If, during the second year of probationary appointment, it is deemed in the best interest of the College to terminate the appointment at the end of the second year, notice of such termination will be given in writing by December 15 (April 15 for a second semester appointment). Thereafter, notice in writing of the termination of any appointment *to which the provisions of this section apply* will be given at least twelve months prior to the date of termination.

Faculty manual, p. 36, para. j (emphasis added).[3]

In January 1988, Chancellor Eaglin met with Vice–Chancellor Rex to discuss whether any probationary faculty members should not be reappointed for the succeeding· academic year. Rex mentioned the names of five such faculty members, one of whom was the plaintiff. Eaglin asked Rex for a final list by April 1988. In April Rex presented Eaglin with his final recommendations concerning probationary faculty who should not be reappointed. Those were: David Majewski, Instructor of Theater and Speech; Barbara Driver, Assistant Professor of Business Administration; and plaintiff, an Assistant Professor of Mathematics. Eaglin accepted these recommendations and the affected faculty members were notified. In accordance with USC–Coastal Carolina's requirement that probationary faculty members who have served more than two (2) years be given "at least twelve months [notice] prior to the date of termination," Rex notified the plaintiff by letter dated May 12, 1988, that his appointment would not be renewed after May 15, 1989.

Plaintiff thereafter sought to grieve his nonreappointment in accordance with USC–Coastal Carolina's grievance procedure. Rex, however, advised plaintiff that under USC–Coastal Carolina policies, nonreappointment of probationary faculty was not grievable. The College adhered to this position despite efforts by plaintiff to dissuade it from this view. When College officials would not yield to plaintiff's view, he appealed to USC President Holderman, and, for the first time, asserted that he was challenging his nonreappointment as a violation of his rights of due process and academic freedom and asserted his belief that his nonreappointment was motivated by his membership in the local chapter of the AAUP and his failure to support Administration proposals for a "core curriculum" at USC–Coastal Carolina.

In a letter dated July 11, 1988, Dr. Holderman remanded plaintiff's grievance to Chancellor Eaglin and directed that the grievance pertaining to plaintiff's nonreappointment—including the allegations of denial of due process and academic freedom —be considered by the Coastal Carolina Faculty Grievance Committee. Thereafter, in a memorandum dated July 15, 1988, Chancellor Eaglin directed the USC–Coastal Carolina Faculty Grievance Committee to convene and consider plaintiff's grievance and to make findings and recommendations concerning plaintiff's allegations of impropriety.

The Coastal Carolina Faculty Grievance Committee devoted five (5) days to hearing from plaintiff and his witnesses, reviewing documentary materials submitted by plaintiff for its consideration, and hearing from, among others, Vice–Chancellor Rex and Dean Puskar, plaintiff's dean. In a report dated July 26, 1988, addressed to Chancel-

**3.** It is undisputed that both of these quoted policies have been in effect at all times since the date of Beken's original appointment to the faculty on August 16, 1983. Apparently, the provisions at issue in this case, originally contained in the 1982–83 faculty manual, are also found in a more recent faculty manual adopted in 1988.

Also, the emphasized language from paragraph j, when read in conjunction with paragraph e's seven year limitation on probationary service, makes clear that this "best interest of the College" standard applies to all probationary appointments—regardless of years of service.

lor Eaglin, the Faculty Grievance Committee, by a vote of four to one, made the following findings and recommendations (emphasis added):

*Finding.* The committee finds no denial of Dr. Beken's academic freedom and no evidence that his involvement in the Core Curriculum Committee and the American Association of University Professors was related to his nonreappointment. Regarding due process, the committee finds that the *nonreappointment occurred within the strict bounds set forth in the USC–Coastal Carolina faculty manual.* The committee does, however, have profound concern about the method of evaluation leading to the decision to nonreappoint. Neither Dr. Subhash Saxena (plaintiff's chairman) nor Dr. Joe Cicero (his dean until 1987) were included in the deliberation; prior evaluations of Dr. Beken by Dr. Cicero were unavailable at the time; and Dean Puskar had no evaluative file whatsoever.

*Recommendation.* Without a finding of denial of academic freedom or due process, the committee cannot recommend that you overturn the decision of nonreappointment. Having discovered the previously missing evaluations, the committee attaches them for your review and recommends that you examine the evaluation procedure used for Dr. Beken.

A copy of this memorandum has been furnished Dr. Beken.

Assistant Professor Stephen West, a member of the Committee, dissented and attached the following dissenting opinion to the Committee's report:

I cannot sign the majority decision because Dr. Beken was given no reason for his nonreappointment. I agree with Dr. Beken that "denial of due process consists of prejudice to future employment opportunities." [4]

By letter dated August 2, 1988, Chancellor Eaglin informed plaintiff that he was upholding the decision not to renew his annual contract.

Plaintiff again appealed Chancellor Eaglin's decision to Dr. Holderman, as he was entitled to do under USC–Coastal Carolina's faculty grievance policy. Plaintiff's attorney presented a lengthy brief to Dr. Holderman urging that he direct USC–Coastal Carolina to reinstate plaintiff and permit him to go through the tenure review process. On September 12, 1988, Dr. Holderman denied the appeal and affirmed the grievance committee and Chancellor Eaglin's decision, stating in part:

I have reviewed your thorough statement in the light of the current Coastal Faculty Manual as well as file documents relevant to Dr. Beken's grievance. I am not persuaded that in this matter there has been a failure of due process or denial of academic freedom. In fact, the published policies and procedures of USC–Coastal have been carefully followed throughout.

Plaintiff appealed from Dr. Holderman's decision to the Academic Affairs and Faculty Liaison Committee of the USC Board of Trustees. On November 10, 1988, that committee convened and heard a presentation on behalf of plaintiff by his attorney. The committee also heard from USC Provost Arthur K. Smith, representative of the administration, and Chancellor Eaglin. In a letter dated November 22, 1988, the committee informed Beken:

Based upon a review of the record taken as a whole, the presentations of Mr. McLain and Provost Smith, and the responses to questions from the Board Committee, the Committee determined that all necessary steps in the grievance process were observed in substantial measure and it was not established that

---

**4.** *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) squarely rejects this purported legal conclusion. Addressing an assumption made by the lower courts that nonretention by one university or college creates concrete and practical difficulties for a professor in his subsequent academic career, the Court, while acknowledging the record contained no support for that assumption, nevertheless stated that mere proof that a professor's record of nonretention in one job might make him somewhat less attractive to some other employers, "would hardly establish the kind of foreclosure of opportunities amounting to deprivation of 'liberty.'" *Id.* at 574 n. 13, 92 S.Ct. at 2707 n. 13.

the nonreappointment decision was an arbitrary or capricious abuse of discretion. Accordingly, the Committee voted to deny your appeal of this nonreappointment decision. This is the final level of review within the University of South Carolina.

Although plaintiff did not seek judicial review of the resolution of his grievance in state court, he filed this action in federal court on January 25, 1989. The court is precluded from reaching a determination on the propriety of plaintiff's motion, however, as it has concluded that this action must be dismissed for lack of subject matter jurisdiction.

Initially, it must be noted that federal courts have always been recognized as courts of limited jurisdiction. As explained by the Supreme Court in *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941):

> [t]he policy of the successive acts of Congress relating the jurisdiction of federal courts is one calling for the strict construction of such legislation. The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."

*Id.* at 108–09, 61 S.Ct. at 872 (quoting *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1933)). This limitation on federal jurisdiction was recently explained in *Davis v. Pak*, 856 F.2d 648 (4th Cir.1988):

> [i]t is axiomatic that the federal courts are courts of limited jurisdiction. The importance of this principle is difficult to overemphasize in our federal system. This Court has repeatedly upheld the integrity of this concept and has recognized that "the burden is on the party asserting the jurisdiction of the court to show that jurisdiction does, in fact, exist." Furthermore, it is always incumbent upon a federal court to evaluate its jurisdiction *sua sponte*, to ensure that it does not decide controversies beyond its authority. Consequently, the fact that neither the parties nor the district court questioned the district court's subject matter jurisdiction does not preclude our jurisdictional examination here.

*Id.* at 650 (emphasis in original) (citations omitted). Accordingly, although not raised by the parties, this court is required to determine whether the present facts sufficiently allege a federal question.

The plaintiff purports to bring his federal claims under 42 U.S.C. § 1983, which provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

Because § 1983, does not, in and of itself, vest this court with jurisdiction to hear this matter, plaintiff relies on 28 U.S.C. § 1343(a)(3) to establish this court's authority to hear his complaints. That provision provides in pertinent part:

> [t]he district court shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
> 
> . . . .
> 
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, customer usage, of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

As previously stated, plaintiff purports to base his claims on the First and Fourteenth Amendments to the United States

Constitution.[5] Specifically, plaintiff asserts he had a protectible property interest in continuing employment as a nontenured, probationary faculty member that was deprived without due process of law. Plaintiff contends that this constitutionally cognizable property interest arose from at least one of the following sources: (1) provisions of the faculty manual and AAUP guidelines concerning termination of probationary nontenured faculty: (2) USC–Coastal Carolina's practice of routinely reappointing probationary faculty, and (3) assurances plaintiff allegedly received when he agreed to transfer into USC–Coastal Carolina's department of mathematics. In response to these assertions, defendants assert quite simply that plaintiff had no protectible property interest in his continuing employment as a nontenured, probationary faculty member at USC–Coastal Carolina, and thus that the due process clause of the Fourteenth Amendment is not implicated by his termination. Consequently, the threshold question in this matter turns on whether plaintiff had a protectible property interest in his continuing employment as a probationary faculty member.

■ In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held that the Fourteenth Amendment did not require an opportunity for a hearing prior to the non-renewal of a nontenured state teacher's contract, unless plaintiff could show that such termination constituted a deprivation of a constitutionally cognizable interest in liberty or property. It is thus well settled that a college professor cannot invoke the procedural protections of the due process clause unless he can establish that he has been deprived of a liberty or a property interest protected by that clause. *Id.* at 569–70, 92 S.Ct. at 2705; *Royster v. Board*

*of Trustees of Anderson County School District #5*, 774 F.2d 618, 620 (4th Cir. 1985), *cert. denied*, 475 U.S. 1121, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986). Accordingly, unless an employee satisfies this threshold requirement, the due process clause is simply not implicated by the discharge. *Roth*, 408 U.S. at 576, 92 S.Ct. at 2708; *Crocker v. Fluvanna County (VA) Board of Public Welfare*, 859 F.2d 14, 16–17 (4th Cir.1988); *Stone v. University of Maryland Medical System*, 855 F.2d 167, 172 (4th Cir.1988); *Garraghty v. Jordan*, 830 F.2d 1295, 1299 (4th Cir.1987); *Royster*, 774 F.2d at 621; *Bunting v. City of Columbia*, 639 F.2d 1090, 1093–94 (4th Cir.1981).

■ Although an employee's abstract desire for or unilateral expectation of continued employment is insufficient to give rise to a constitutionally protected property interest, *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, "[a] property interest exists when one has a legitimate claim of entitlement ... arising from such sources as state statutes, local ordinances, and employment contracts." *Bunting*, 639 F.2d at 1093.

■ Constituting an important safeguard against improper assertion of state law claims in a federal forum, the substantiality doctrine requires dismissal where the alleged claim under the constitution or federal statute is plainly insubstantial or frivolous or where previous Supreme Court precedent leaves no room for the inference that the questions sought to be raised can be the subject of controversy. *Levering & Garrigues Company v. Morrin*, 289 U.S. 103, 105–06, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933); *Harris Distilling Company v. Baltimore*, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910); *McGilvra v. Ross*, 215 U.S. 70, 80, 30 S.Ct. 27, 31, 54 L.Ed. 95 (1909); *Newburyport Water Company v.*

---

**5.** Plaintiff's First Amendment claim is clearly frivolous. At the hearing on this matter, plaintiff conceded that the only evidence he had to support his First Amendment claim was that the defendants, in his view, had never given him a legitimate reason for his nonreappointment. On this basis, plaintiff asserts that a jury could reasonably infer that the plaintiff was terminated for exercise of his free speech rights. Obviously, plaintiff's First Amendment claim is wholly frivolous and thus must be dismissed for the same reason that mandates dismissal of his due process claim. Only plaintiff's due process assertions, therefore, will be analyzed in the remainder of this Order. Nonetheless, the controlling precedent that constrains this court to dismiss plaintiff's due process claim is equally applicable to his frivolous First Amendment contentions.

*Newburyport,* 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904). The Supreme Court reaffirmed the obligation of federal courts to apply the substantiality doctrine in appropriate circumstances in *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). The Court determined that claims are constitutionally insubstantial only if its prior decisions inescapably render the claims frivolous. *Id.* at 538, 94 S.Ct. at 1379. As stated by the Court:

> [c]laims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial.... a claim is insubstantial only if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy."

*Id.* at 537–38, 94 S.Ct. at 1378–79 (citations omitted).

This modern formulation of the substantiality doctrine was applied to bar assertion of a frivolous due process claim in *Davis v. Pak,* 856 F.2d 648 (4th Cir.1988). There, a former state employee brought an action under § 1983 against various state officials involved in her disciplinary proceeding alleging deprivation of procedural due process. Plaintiff, Evelyn Davis, was terminated from her position as a supervisor with the Virginia Employment Commission. Because this circuit has concluded that Virginia state employees have a constitutionally protected property interest in their continued employment, *see Garraghty,* 830 F.2d at 1299, the commission confronted plaintiff with the charges against her and she was given the opportunity to rebut them. After the commission terminated her employment, plaintiff filed a grievance that was eventually heard by a three member arbitration panel. This panel determined that she should be reinstated without back pay and also recommended that she be transferred from her unit and demoted to a grade below supervisor. There-

after, defendant Chong M. Pak, Director of the Department of Personnel and Training for the Commonwealth of Virginia, reviewed the panel's decision and found it to be consistent with the law and written policy of the Commonwealth. Pak determined that the commission was free to implement the panel's suggestion, which the commission did, reinstating plaintiff and informing her that she would be transferred to a different unit and reclassified to a nonsupervisory position. *Id.* at 649–50.

Contending that Pak exceeded his authority in approving a punishment which was in excess of that mandated by the Virginia standards of conduct, plaintiff thereupon filed an action under 42 U.S.C. § 1983 alleging the deprivation of her property interest in her job without due process of law. *Id.* The district court dismissed plaintiff's claims at the pleading stage, determining that her suit was proscribed in federal court by Virginia's sovereign immunity and that her constitutional claim was nonmeritorious. *Id.* at 650.

On appeal, the court of appeals concluded that the district court had been without subject matter jurisdiction to entertain the action. Noting that federal courts are courts of limited jurisdiction and that the burden is on the party asserting jurisdiction to show it in fact exists, the court reaffirmed the duty of a federal court to evaluate its jurisdiction *sua sponte* in order to ensure it does not decide controversies beyond its authority. *Id.* at 650. The court concluded that it was not sufficient to obtain federal jurisdiction under 28 U.S.C. § 1343(a)(3) by merely asserting a constitutional violation. Rather, "federal jurisdiction requires that a party assert a substantial federal claim." *Id.* at 650. While noting that *Hagans* made it clear that dismissal for insubstantiality is appropriate only where the proper claim is truly frivolous, the court nevertheless concluded that "*Hagans* stands for the proposition that federal courts are without jurisdiction to hear frivolous constitutional claims." *Id.* at 651, citing *Fields v. Blum,* 629 F.2d 825 (2d Cir.1980), among others.

Significantly, the court concluded that the substantiality doctrine was especially important where a wholly frivolous federal claim served as a pretext to allow litigation of a state law issue in a federal forum. According to the court:

> [t]he doctrine of substantiality is especially important where a wholly frivolous federal claim serves as a pretext to allow a state law issue, the real focus of the claim, to be litigated in the federal system. The importance of the substantiality doctrine lies in the difference between dismissing a weak federal claim via Federal Rules of Civil Procedure 12(b)(6) or in dismissing for lack of jurisdiction. If a court disposes of the claim on the merits, it retains the power to decide any attendant state law issues or pendent state law claims. If the federal claim is found insubstantial, however, the court is also without jurisdiction to decide any state issues or claims and they must be resolved in state court. *The federal courts must, therefore, guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state law claim adjudicated in the federal system. An informed sense of comity cautions against the federal courts taking such cases and Article III of the Constitution forbids it.*

*Id.* at 651 (emphasis added) (footnotes omitted). Finding that plaintiff's due process claim was frivolous, the court determined the crux of plaintiff's claim to be a purely state law matter. *Id.* at 652. While noting that plaintiff's state law claim might be colorable, the court concluded that the Constitution did not contemplate federal court litigation of purely state law issues among nondiverse litigants. *Id.*

While plaintiff tries desperately to make more of it, this case involves nothing more than a garden variety nonreappointment of a probationary faculty member at a public university. Because plaintiff's contention that he had a protectible property interest in his continuing employment as a nontenured, probationary faculty member is wholly frivolous, this court is without power to interfere with a state university's decision not to renew his annual contract.

■ Plaintiff first contends that the faculty manual and certain AAUP standards allegedly incorporated by reference in the faculty manual conferred upon him a property interest in his employment which could not be terminated without compliance with these provisions.[6] Under South Carolina law, once an employer voluntarily chooses to publish a handbook or bulletin and orally assures employees that the provisions of those publications will be followed, an employer may be held liable for *breach of contract* if the handbook, bulletin, or other similar material is couched in *mandatory* terms. *Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E.2d 452, 454–55 (1987). Here, the evidence falls far short of establishing any right of action for breach of contract under the doctrine enunciated in

---

6. As previously stated, this court has determined that the faculty manual, p. 36, paras. e, j, clearly addresses the procedures to be utilized in the nonrenewal of probationary faculty. In any event, the procedural due process guarantees do not include any general requirement of reasonableness in a state agency's interpretation and application of its own stated procedures. *Wood v. Strickland*, 420 U.S. 308, 325, 95 S.Ct. 992, 1002, 43 L.Ed.2d 214 (1975). At least where there is colorable evidence that stated procedures were substantially followed, this court is precluded from supplanting "the interpretation of the regulation of those officers who adopted it and are in entrusted with its enforcement." *Id.* Accordingly, "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion.... § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees." *Id.* at 325–26, 95 S.Ct. at 1003 (citations omitted). Although there may be more than one reasonable interpretation as to the degree of incorporation of AAUP guidelines accomplished through use of the "generally adheres" reference followed by a clear and unambiguous disclaimer, this court must defer to the reasonable interpretation adopted by defendants—in short, that the provisions regarding termination of probationary faculty contained in the faculty manual differ from and override any AAUP standards on the subject. Indeed, the USC–Coastal Carolina Faculty Grievance Committee apparently made a similar conclusion, determining that plaintiff's nonreappointment occurred within the strict bounds set forth in the USC–Coastal Carolina faculty manual.

*Small,* and certainly does not create any constitutionally cognizable property interest. First, precatory language such as "generally adheres" falls far short of the *mandatory* language necessary to create a binding contract. Second, the record is devoid of any evidence that defendants ever orally assured plaintiff that the termination provisions found in the AAUP recommendations would in fact be followed. Rather, the faculty manual provisions specifically addressing probationary, nontenured employees provided that such employees could be terminated if "deemed in the best interest of the College." Consequently, plaintiff's first contention is wholly frivolous and fails to raise any substantial due process question.

■ Plaintiff next contends that the alleged practice of defendants in routinely renewing annual contracts of probationary employees created a protectible property interest in his continued employment. It is hard to imagine how this strained argument could pass muster under the *Small* criteria. As noted by the Court in *Roth,* something approaching a common law of reemployment would have to be established to require USC–Coastal Carolina officials to even give a reason for nonrenewal, much less to require a university to rehire probationary employees indefinitely. 408 U.S. at 578 n. 16, 92 S.Ct. at 2710 n. 16. Unless an employee is required to violate the law as a condition of continued employment, the doctrine of employment at will continues to apply in this state. *Ludwick v. This Minute of Carolina,* 287 S.C. 219, 337 S.E.2d 213, 216 (1985). Of course, the present plaintiff had a right to employment for each academic year based upon his annual, year-to-year contract with the defendants. To this extent his status as a terminable at will employee was altered. In other words, he could not be terminated, absent cause, until the end of any academic year. Nevertheless, *Small* made quite clear that a property interest only arises where the employer *affirmatively creates* an enforce-

able obligation. Plaintiff here attempts to argue the converse—that a property right can arise by mere inaction or passivity on the part of an employer. Or, alternatively, that an employer can waive his right to terminate a particular probationary employee because he usually renews the annual contracts of such probationary employees. Obviously, this argument does not give rise to a breach of contract claim under state law, and certainly falls far short of establishing a protectible property interest under any recognized interpretation of the due process clause.

■ Finally, plaintiff argues that he obtained a constitutionally cognizable property interest by accepting a transfer into the department of mathematics. Plaintiff alleges that he was told that if he accepted the assignment, his ex-departmental chairman, Dr. Cicero, would be involved in any subsequent decision regarding his future employment with USC–Coastal Carolina. Assuming plaintiff was in fact given this assurance, this might establish the oral assurance component discussed in *Small.* Nevertheless, it was never reduced to writing, as required by *Small,* and thus no action for breach of contract would presumably lie. Consequently, as this assertion fails to establish a colorable property interest under state law, the court is likewise constrained to find this contention wholly insubstantial as a constitutional argument.

■ Although plaintiff has attempted to construe this case otherwise, through sometimes artful and certainly voluminous pleadings, it is clear that plaintiff's contentions are wholly frivolous. Like in *Davis,* plaintiff here has brought his action under § 1983 and has relied upon § 1343 for jurisdiction. But all courts agree that mere assertion of an alleged federal constitutional violation is not sufficient to confer jurisdiction upon a federal district court. 856 F.2d at 650.[7] This court finds that all of the specified reasons for continued recogni-

7. It can be forcefully argued, moreover, that application of the substantiality doctrine is even more appropriate here than in *Davis.* Unlike in *Davis,* where a protectible property interest did exist in plaintiff's employment, here Beken was merely a probationary, nontenured employee. As such, the due process clause is not even implicated by his discharge. *See supra* p. ——.

tion of the substantiality doctrine apply in this case: (1) comity to state courts to resolve purely state law issues; (2) Article III constraints on the exercise of federal jurisdiction; and (3) prevention of litigation of state law issues among nondiverse litigants in a federal forum. *Id.* at 648, 652. Obviously, the assertion that great deference should be accorded to a coequal state judiciary, *see Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985); *Culombe v. Connecticut,* 367 U.S. 568, 605, 81 S.Ct. 1860, 1880, 6 L.Ed.2d 1037 (1961) (Opinion of Frankfurter J.), becomes meaningless if the mere pleading of a federal constitutional claim confers federal jurisdiction—especially where, as here, the real crux of the plaintiff's claim is that defendants, as officers of a state university, violated their own procedures in terminating his employment. As the court concluded in *Davis,* application of the substantiality doctrine is especially important where a wholly frivolous federal claim serves as a pretext to allow litigation of a state law issue in a federal forum.[8]

Plaintiff's allegations simply fail to give rise to any substantial federal question. First, there is simply *no* evidence that plaintiff's dismissal was due to exercise of his free speech rights under the First Amendment. Also, as plaintiff clearly has no property interest in his continued employment as a nontenured, probationary employee, the due process clause is simply not implicated by his termination. In accordance with the faculty manual, plaintiff was informed of his nonreappointment one year in advance of his actual termination. As such, plaintiff's constitutional contentions are wholly frivolous and this court, after careful consideration, must, *sua sponte,* dismiss this action.

Based on the foregoing analysis and cited authorities, this court is constrained to dismiss this action for lack of subject matter jurisdiction.

IT IS SO ORDERED.

---

8. Of course, there is a method to plaintiff's madness. Because invocation of § 1983 may entitle the prevailing attorney to fees under 42 U.S.C. § 1988, transforming a solely state law issue into a § 1983 claim is particularly advantageous. But this fact merely reinforces the need to "guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state law claim adjudicated in the federal system." *Davis,* 856 F.2d at 651. Indeed, plaintiff has in fact requested attorneys' fees under § 1988 in his complaint.