20790

CITY OF SPARTANBURG, Appellant, v. SPARTAN VILLA, a
Limited Partnership, Horizon Apartments, Ltd. and J. Wesley
Davis, Respondents.

(253 S. E. (2d) 501)

*T. E. Walsh* and *William E. Walsh,* of *Gaines & Walsh,* Spartanburg, for appellant.

*C. Thomas Wyche,* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for respondents.*

October 24, 1978.

NESS, Justice:

This litigation arose following the appellant City of Spartanburg's attempt to collect a sewer tap fee from the owner

of respondent Spartan Villa, an apartment complex. The trial court, sitting without a jury, concluded that a $10,000 tap fee was due. We affirm in part and reverse in part.

In 1971, Spartan Villa proposed to construct a 200 unit apartment complex under the auspices of the FHA on an 18 acre tract outside the City of Spartanburg. The parties negotiated the annexation of the site and the availability of sewer and utility service. According to the annexation ordinance, the costs of construction were to be charged to the Sewer Bond Fund. The obligations for sewer bonds are paid by *ad valorem* taxes assessed on the City taxpayers.

On December 5, 1972, the City issued a certification to Spartan Villa, assuring the availability of water and sewer service and making the project feasible. The City constructed a twelve inch trunk line to Spartan Villa's property line and respondent then constructed an eight inch line from that point over its property to the apartment building.

On December 22, 1972, the City billed and Spartan Villa paid $1,500, "FOR Sewer Tap Fee PERMIT AT: 2096 East Main Street." There was no reservation that the tap was temporary or that the fee was only partial payment.

In the fall of 1973, as the project was nearing completion, a dispute developed about the sewer service and connection charge. On December 6, 1973, Spartan Villa received a letter from the City engineer stating that only *temporary* permission was granted for use of the sewer system. This letter was the first indication that the sewer was temporary.

Accordingly, although the project was complete, the sewer service was allegedly only temporary. Final FHA approval and permanent financing for Spartan Villa were in jeopardy.

By letter dated January 8, 1974, the City informed Spartan Villa that the City Council was considering a new, more favorable policy for assessing sewer tap fees. Spartan Villa signed a copy of the letter agreeing to the prospective, albeit unstated, policy.

In May of 1974, Spartan Villa was notified that pursuant to the newly enacted ordinance, the sewer tap fee due was $30,150 less any deposits. That fee remained unpaid and the City brought suit for its payment, less $1,500 paid or $28,650.

The City's claim to the escalated fee is based squarely on an alleged contract supposedly emanating from the January 8, 1974 letter. The trial court concluded the agreement between the parties antedated that letter. Moreover, the court held that even if the January 8, 1974 letter constituted a contract, it was void because it was obtained under extreme economic duress. The court further found that under equitable principles, Spartan Villa was liable to the City for a $10,000 tap fee, or less the $1,500 deposit, $8,500.

On appeal, the City asserts:

(1) The lower court erred in concluding the January 8, 1974 letter did not constitute a binding contract;

(2) Even if the January letter did not constitute a binding contract, the court erred in ordering Spartan Villa to pay only a $10,000 tap fee.

Spartan Villa also excepts to that portion of the trial court's order finding $10,000 to be an equitable tap fee.

It is well settled that in an action at law, on appeal of a case tried without a jury, the findings of fact of the trial judge will not be disturbed unless found to be without evidence which reasonably supports them. *Townes Assoc., Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

We conclude the trial judge was correct in holding that the January 8, 1974 letter did not constitute a binding contract and that, in fact, the parties had reached an agreement prior to that time.

The January 8th letter fails as a contract because it contained no present consideration. In December, 1972, the City issued the following certification to

Spartan Villa: "Please be advised that water and sewer will be available at the above-referenced project site." The City's repetition in January, 1974, of its existing legal promise to provide sewer service does not constitute consideration. A promise by a party to do that which it has already legally obligated itself to do is not a valid consideration. *Rabon v. State Finance Corp.*, 203 S. C. 183, 26 S. E. (2d) 501 (1943); see also 1A Corbin on Contracts, § 171, *et seq.* (1950); J. Calamari and J. Perillo, Contracts, § 60 (1970).

The trial court correctly held that absent a valid consideration, the January 8th letter could not constitute a binding contract. We concur that an agreement between the parties was reached prior to that time and consummated when Spartan Villa paid the $1,500 tap fee without any notice that the promised sewer service was only temporary. In view of our holding that no contract was formed by the January 8, 1974 correspondence, we need not decide whether Spartan Villa acted under duress in agreeing to the letter.

We reverse the trial court's conclusion that $10,000 is a reasonable tap fee to be assessed against Spartan Villa. There is no evidence in the record to support this figure, and it far exceeds fees paid by other apartment projects completed about the same time. According to the testimony, similar apartment projects in the City paid fees ranging from $400 to $2,500. Particularly disturbing is the fact that Regency Apartments, a complex built at the same time as Spartan Villa, hooked onto the sewer line in question after the ordinance was adopted and paid only $400. (Tr. 51-53). Spartan Villa paid a $1,500 tap fee and hooked onto the line *before* the ordinance was adopted; yet Spartan Villa was assessed an additional tap fee of $28,650.

We do not believe the City may, by retroactive ordinance, increase the sewer tap fee due by Spartan Villa. Once the $1,500 fee was paid, the permit issued, and the project completed, the City was obligated to furnish sewer

service without any further liability on the part of Spartan Villa.

We affirm that portion of the trial court's order concluding that a contract was formed between the parties prior to the January 8, 1974 letter, and reverse that portion assessing Sparta Villa an additional tap fee of $8,500.

Affirmed in part; reversed in part.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.