22736

Kathy L. SMALL, Respondent v. SPRINGS INDUSTRIES, INC., Appellant.
(357 S. E. (2d) 452)

Supreme Court

*James H. Watson, Mark R. Holmes* and *Kenneth E. Young, Leatherwood, Walker Todd and Mann,* Greenville, and *Christopher S. Barnard,* of *Legal Dept., of Springs Industries, Inc.,* Fort Mill, *for appellant.*

*Herbert W. Louthian,* of *Louthian & Louthian,* Columbia, and *Thomas C. Davis,* Beaufort, *for respondent.*

Heard May 21, 1986.

Decided June 8, 1987.

HARWELL, Justice:

Respondent Small sued appellant Springs Industries, Inc. (Springs) for breach of contract. After Small had been employed at Springs for five years, the company issued an employee handbook and distributed it to all of its employees. Springs later issued a bulletin to all employees setting forth in full the handbook's termination procedure. This handbook and bulletin provided for a four-step disciplinary process which consisted of a verbal reprimand, a written warning, a final written warning, and discharge. Small was discharged after only one written warning. The trial judge allowed the jury to determine whether or not the employee handbook, the bulletin, and oral assurances by Small's supervisors that Springs would always follow the handbook's four-step discharge process, altered the otherwise at-will employment relationship. The jury found for Small and returned a verdict of $300,000 actual damages for breach of the employment contract. Springs appeals. We affirm in part, reverse in part, and remand.

Small's employment record at Springs is less than impressive. Her record is replete with absences and injuries. Nonetheless, Springs' employee handbook provides a four-step discharge policy for all of its employees. The handbook does contain an exception to this four part process: "[S]ome offenses, such as fighting, drunkenness, and others of an equally serious nature, will lead to immediate discharge without the usual four-step procedure being followed." At trial, Small's boss testified that he had never had any disciplinary problems with Small; she had never come to work intoxicated; and she had never created any fights or disputes.

Under the common law, a trial court should submit to the jury the issue of existence of a contract when its existence is questioned and the evidence is either conflicting or admits of more than one inference. *Capital City Garage and Tire Co. v. Electric Storage Battery Co.*, 113 S. C. 352, 101 S. E. 838 (1920); *Benya v. Gamble*, 282 S. C. 624, 321 S. E. (2d) 57 (Ct. App. 1984); 17A C. J. S. *Contracts* § 611 (1963). It was for the jury to decide whether the handbook, the bulletin, and the oral assurances constituted an employment contract. If the jury found that they did, then it had to decide whether or not Springs reasonably could have deter-

mined that Small's actions constituted a serious offense which could result in discharge without the four-step process. The jury obviously determined that a contract was established and that Small's actions could not have fallen into the "serious offense" category. Since Springs admittedly failed to follow its own discharge policy, the jury allowed Small to recover for breach of contract. In a law action that is tried by a jury, our jurisdiction extends only to correcting errors of law. We will not disturb a factual finding made by the jury unless there is no evidence in the record which reasonably supports the jury's findings. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

Springs contends that no employment contract was established and, therefore, Small remained an at-will employee who could be terminated without notice for any reason. Small acknowledges the validity of the at-will employment rule but she contends that Springs altered this relationship and became contractually bound by the employee handbook, bulletin, and oral assurances of her supervisors. Springs contends that no employment contract was established because there was no mutuality or "meeting of the minds" between the parties; the writings did not contain the necessary elements of an employment contract; and the writings lacked reciprocal rights, duties, and obligations.

Springs' analysis might be valid if it were applied to a ▆▆ bilateral contract or agreement. The employment agreement in this case, like most employment agreements, was a unilateral agreement. Springs made an offer or promise to hire Small in return for specified benefits and wages. Small accepted this offer by performing the act on which the promise was impliedly or expressly based. Springs' promise constituted the terms of the employment agreement. Small's action or forebearance in reliance on Springs' promise was sufficient consideration to make the promise legally binding.[1] There was no contractual requirement that Small do anything more than perform the act on

---

[1] At will employment constitutes sufficient consideration to support a covenant not to compete. *Riedman Corporation v. Jarosh*, 290 S. C. 252, 349 S. E. (2d) 404 (1986).

which the promise was predicated in order to legally bind Springs. *See Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 630-31, 292 N. W. (2d) 880, 900 (1980). (Ryan, J., concurring).

Unquestionably, Springs was under no obligation to write and distribute the employee handbook or the bulletin. Once Springs voluntarily chose to publish the handbook and bulletin and orally assure the employees that the provisions of those publications would be followed, there were "strong equitable and social policy reasons militating against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice." *Walker v. Westinghouse Electric Corporation*, 77 N. C. App. 253, 259, 335 S. E. (2d) 79, 83 (1985). "Having announced the policy, presumably with a view to obtaining the benefit of improved employee attitudes and behavior and improved quality of the work force, the employer may not treat its promise as illusory." *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 619, 292 N. W. (2d) 880, 895 (1980).

If an employer wishes to issue policies, manuals, or bulletins as purely advisory statements with no intent of being bound by them and with a desire to continue under the employment at will policy, he certainly is free to do so. This could be accomplished merely by inserting a conspicuous disclaimer or provision into the written document. It is patently unjust to allow an employer to couch a handbook, bulletin, or other similar material in mandatory terms and then allow him to ignore these very policies as "a gratuitous, nonbinding statement of general policy" whenever it works to his disadvantage. Assuredly, the employer would view these policies differently if it were the employee who failed to follow them.

Springs contends that employers will stop providing handbooks, bulletins, and similar materials if they are bound by them. If company policies are not worth the paper on which they are printed, then it would be better not to mislead employees by distributing them. Due to the potential for gross inequality in a situation such as the one in the case at bar, a majority of states has determined that a handbook can alter the employment status. *See Annot.*, 33

A. L. R. 4th 120 (1984). South Carolina, as a progressive state which wishes to see that both employer and employee are treated fairly, now joins those states. We hold that a jury can consider an employee handbook, along with other evidence, in deciding whether the employer and employee had a limiting agreement on the employee's at-will employment status. The jury in this case considered all the evidence and returned a verdict in Small's favor. "The courts will exercise the greatest self-restraint in interfering with the constitutionally mandated process of jury decision. (Citation omitted)." *Gates v. Life of Montana Insurance Company*, 40 St. Rep. 1287, 668 P. (2d) 213, 215 (Mont. 1983). Under our scope of review as set forth in *Townes Associates*, the jury's decision that there was a contract and that it was breached by *Springs* must be affirmed.

As to the $300,000 award of actual damages, Springs contends that the verdict was grossly excessive and based on passion, prejudice, caprice, or other improper considerations not found in the evidence. We agree. Small failed to present any evidence from which the jury reasonably could conclude that she would be unable to find any employment for the remainder of her work life. The size of the jury's verdict alone establishes it as grossly excessive under the facts of this case. The dollar amount is more than actual compensation at present value for the income Small could have received for the rest of her reasonable work life at the hourly wage she was receiving.

The jury's verdict would put Small in the position of never having to work again and having no obligation to mitigate her damages. In his written order, the trial judge acknowledged that the damages were substantial, but concluded that it was proper because of a number of elements which the jury "could have taken into consideration." These included such items as respondent's reasonable work life, regular pay increases, fringe benefits, and retirement benefits. While these are generally proper elements to consider, no evidence was presented at trial from which the jury reasonably could determine the value of these elements to Small. To allow Small to recover for loss of wages and benefits for the remainder of her life is unreasonable and contrary to her duty to minimize her damages. *See Hutson v. Cummins Carolinas, Inc.*, 280 S. C. 552, 314 S. E. (2d) 19 (Ct. App. 1984).

The jury's $300,000 verdict was excessive and based ■ upon improper considerations not found in the evidence. When the verdict is grossly excessive and the amount awarded is so shockingly disproportionate to the injuries as to indicate that the jury acted out of passion, caprice, prejudice, or other considerations not founded on the evidence, it becomes the duty of this Court, as well as the trial court, to set aside the verdict. *Easler v. Hejaz Temple A. A. O. N. M. S. of Greenville, S. C.*, 285 S. C. 348, 329 S. E. (2d) 753 (1985); *Ray v. Simon*, 245 S. C. 346, 140 S. E. (2d) 575 (1965). The damage portion of the verdict is set aside and the case is remanded for a new trial on the issue of damages only. On remand, the trial court judge shall thoroughly instruct the jury of Small's duty to mitigate her damages.

Affirmed in part; reversed in part; and remanded.

NESS, C. J., and FINNEY, J., concur.

GREGORY, J., dissents.

CHANDLER, J., not participating.

GREGORY, Justice, dissenting:

I disagree with the majority that conditions for discharge promulgated in an employee handbook become part of an existing at-will employment contract absent a valid agreement to that effect.

Small presented no evidence that the parties agreed the provisions of the handbook were to become part of her employment contract. Moreover, she did not allege any consideration that would support an agreement to incorporate the terms of the handbook into her existing employment contract. The majority's characterization of the employment contract as "unilateral" does not dispense with this requirement. Although mutuality of obligation is not an essential element in a unilateral contract, a valuable consideration is necessary. *International Shoe Co. v. Herndon*, 135 S. C. 138, 133 S. E. 202 (1926). Performance of that which one is already bound to do is not valid consideration. *City of Spartanburg v. Spartan Villa*, 273 S. C. 1, 253 S. E. (2d) 501, (1978); *Castell v. Stephenson Finance Co.*, 244 S. C. 45, 135 S. E. (2d) 311 (1964). Mere continuation of employment is not suffi-

cient consideration to support an agreement altering the terms of an employment contract.

Because Small presented only evidence of an indefinite employment contract that was terminable at will, I would reverse the denial of Springs' motion for a directed verdict. This conclusion is consistent with the decisions of many courts refusing to find that the provisions of a handbook modify the terms of an employment contract. *See e.g.,* *Muller v. Stromberg Carlson Corp.*, 427 So. (2d) 266 (Fla. Dist. Ct. App. 1983); *Spero v. Lockwood, Inc.*, 111 Idaho 74, 721 P. (2d) 174 (1986); *Gates v. Life of Montana Ins. Co.*, 196 Mont. 178, 638 P. (2d) 1063 (1982); *Sabetay v. Sterling Drug, Inc.*, 114 A. D. (2d) 6, 497 N. Y. S. (2d) 655 (1986); *Walker v. Westinghouse Electric Corp.*, 77 N. C. App. 253, 335 S. E. (2d) 79 (1985), *cert. denied,* 315 N. C. 597, 341 S. E. (2d) 39 (1986); *Richardson v. Charles Cole Mem. Hosp.*, 320 Pa. Super. 106, 466 A. (2d) 1084 (1983); *Reynolds Mfg. Co. v. Mendoza,* 644 S. W. (2d) 536 (Tex. App. 1982); *Larose v. Agway, Inc.*, 147 Vt. 1, 508 A. (2d) 1364 (1986); *see generally Annot.,* 33 A. L. R. 4th 120 (1984).

Unfortunately, today's holding may result in the removal of employee handbooks from the workplace. Also, I fear the immediate effect of today's holding on other at-will employees who, unlike Small, are satisfactory employees. Will not employee morale suffer because a skilled and efficient employee can be summarily terminated but a bungling and inept employee must receive all the warnings provided in a handbook? In discarding sound principles of contract law, the majority has unsettled existing employment law. In my view, today's holding, without promoting job security, tends to stifle quality economic growth and development and hinder expanded job opportunities in this State. For these reasons, I would reverse.