898 F.2d 147
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dennis Michael SMITH, Plaintiff-Appellant,
v.
PIEDMONT AVIATION, INC., Defendant-Appellee.
 No. 89-2382.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 6, 1989.
Decided: Feb. 26, 1990.
Rehearing Denied March 23, 1990.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Norwood Carlton Tilley, Jr., District Judge. (CA-87-699-WS-C)
 Douglas H. Westbrook, Leesburg, Virginia, for appellant.
 William T. Cranfill, Jr., Blakeney, Alexander & Machen, Charlotte, North Carolina, for appellee.
 On Brief: John C. Miller, Blakeney, Alexander & Machen, Charlotte, North Carolina, for appellee.
 M.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, and K.K. HALL and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Dennis Michael Smith appeals from the order of the district court granting summary judgment for Piedmont Aviation, Inc. (Piedmont). Smith contends that the district court erred in holding that he was an employee-at-will and thus could not maintain a claim for breach of an employment contract. Smith further contends that the district court erred by not addressing his claims for breach of an implied covenant of good faith and fair dealing and for intentional infliction of emotional distress. We affirm.
 
 I.
 
 2
 On August 31, 1983, Smith signed a Piedmont application for employment containing a section that stated in pertinent part:
 
 
 3
 Neither the acceptance of this application nor the subsequent entry into either a part-time, probationary, or regular employment relationship, reguardless [sic] of the terms and conditions thereof, will serve to create an actual or implied contract of employment, to confer any right to remain in Piedmont's employ, or otherwise to change in any respect the employment-at-will relationship between Piedmont and the Applicant.
 
 
 4
 The application also stated that it "shall be construed to apply to all positions that I may hereafter hold with you...."
 
 
 5
 On September 7, 1983, Piedmont hired Smith as a part-time station agent at its Myrtle Beach, South Carolina, facility. While employed there, Smith made several requests for a transfer to various full-time positions. In January 1986 he requested a transfer to the position of flight attendant. Piedmont selected Smith for its Flight Attendant Training Class 86-E and requested that he resign his part-time position in Myrtle Beach. Smith began flight attendant training on June 2, 1986, in Winston-Salem, North Carolina.
 
 
 6
 On the first day of training, Smith signed a document entitled "Guidelines for Testing and Evaluating Flight Attendant Trainees" (Guidelines), which stated in part:
 
 
 7
 Piedmont believes that for you to carry out your job requirements effectively, nothing is more important than a good attitude. During the time you spend with us in training, you will be evaluated by your instructors in regard to both your grade average and your attitude. We will hold personal conferences with each trainee, and if you have a problem, it will be discussed with you.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 Be aware, however, that if we see a continuing problem in attitude with any trainee, and we cannot reach an understanding on that problem, this will be grounds for dismissal of that trainee.
 
 
 11
 On June 16, 1986, Piedmont terminated Smith from the trainee program because it concluded that Smith had an unacceptable attitude. Smith testified that he attended a "personal conference" on June 10, 1986, but his attitude was not discussed. He contends that he was not advised that he had an attitude problem and he was not requested to attend a personal conference to discuss an attitude problem.
 
 
 12
 Shortly after his termination, Smith filed suit in South Carolina state court alleging wrongful termination of employment, breach of an implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. Piedmont removed the case to the United States District Court for the District of South Carolina. The district court transferred venue to the Middle District of North Carolina pursuant to 28 U.S.C.A. Sec. 1404(a) (West 1976).
 
 II.
 
 13
 In his complaint, Smith alleged that an employment contract was created by the Guidelines which altered the "employment-at-will relationship" between himself and Piedmont. A dispute arose in the district court over whether North Carolina or South Carolina law applied. Smith contended that South Carolina law applied because he was a resident of South Carolina at the time he accepted Piedmont's offer to enter flight attendant training. Piedmont contended that North Carolina law applied because Smith entered the trainee program in North Carolina and was given the Guidelines in North Carolina.
 
 
 14
 The district court correctly determined that as a matter of law Smith was an employee-at-will and thus had no contract claim under either North Carolina or South Carolina law. Construing the Guidelines as equivalent to an employer's policy manual, we note that under North Carolina law "an employer's personnel manual is not part of an employee's contract of employment." Harris v. Duke Power Co., 319 N.C. 627, 630, 356 S.E.2d 357, 359 (1987). However, in attempting to distinguish Harris, Smith argues that his resignation of the position in Myrtle Beach and his move to Winston-Salem constituted additional consideration sufficient to support the finding that a contract existed. See Sides v. Duke University, 74 N.C.App. 331, 328 S.E.2d 818 (plaintiff's move from Michigan to North Carolina to accept employment with defendant was additional consideration which took contract out of employment-at-will rule), disc. review denied, 314 N.C. 331, 333 S.E.2d 490 (1985). Even if resigning and moving from Myrtle Beach to Winston-Salem could constitute additional consideration, Smith resigned and moved before he learned of or received the Guidelines and, thus, this purported consideration could not support an alleged contract not yet in existence.
 
 
 15
 Smith also relies on Trought v. Richardson, 78 N.C.App. 758, 338 S.E.2d 617, disc. review denied, 316 N.C. 557, 344 S.E.2d 18 (1986), for the proposition that when there is a bilateral agreement between the employer and the employee, the agreement alters the employment-at-will relationship. Smith argues that because he signed the Guidelines, Trought requires us to hold that this document constituted an employment contract. However, in Trought the employee signed a statement at the time she was employed attesting that she had read the policy manual which provided that she could only be discharged for cause. Here, unlike in Trought, the only document Smith signed at the time he was employed by Piedmont was the initial employment application which provided that any subsequent positions with Piedmont would be considered at-will employment. Moreover, the Guidelines contained no statement that Piedmont could only discharge Smith for cause. Thus, the fact that Smith signed the Guidelines does not alter our conclusion that the Guidelines did not constitute a contract of employment.
 
 
 16
 We agree with the district court that the same result would occur under South Carolina law. In Small v. Springs Industries, Inc., 292 S.C. 481, 357 S.E.2d 452 (1987), the South Carolina Supreme Court held that whether an employer is contractually bound by a discharge procedure contained in an employee handbook is a question for the jury. Id. at 483, 357 S.E.2d at 454. However, the court noted that an employer may continue an employment-at-will policy by expressing such an intent in a disclaimer. Id. at 485, 357 S.E.2d at 455. Here, Smith's initial Piedmont application contained a conspicuous provision indicating that Piedmont intended to continue an employment-at-will policy.
 
 
 17
 Finding that the Guidelines did not alter Smith's employment-at-will relationship with Piedmont, the district court granted summary judgment for Piedmont. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). Rule 56 mandates the entry of summary judgment against a party who, after a reasonable time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to a judgment as a matter of law.' " Id. at 323. Because Smith failed to establish that the Guidelines created an employment contract or altered his employment-at-will relationship with Piedmont, we agree with the district court that summary judgment was appropriate.
 
 III.
 
 18
 There is no evidence in the record to support Smith's claim that Piedmont acted in bad faith or breached any implied covenant of good faith and fair dealing in connection with his alleged employment contract. Smith's remaining claim that his action for intentional infliction of emotional distress was sufficiently supported by the facts to entitle him to trial by jury is without merit.
 
 
 19
 AFFIRMED.