**Ronnie STORMS, Plaintiff,**

v.

**GOODYEAR TIRE & RUBBER COMPANY, Defendant.**

**Civ. A. No. 6:90–2193–9.**

United States District Court, D. South Carolina, Greenville Division.

Aug. 16, 1991.

Randall Scott Hiller, Greenville, S.C., for Ronnie Storms.

J. Hamilton Steward, III, Greenville, S.C., for Goodyear Tire & Rubber Co.

## ORDER

SHEDD, District Judge.

This matter is before the Court on post-trial motions of plaintiff and defendant. Plaintiff, Ronnie Storms (hereinafter "Storms") moves for a "new trial nisi additur" and the defendant Goodyear Tire & Rubber Company (hereinafter "Goodyear") moves for a judgment notwithstanding the verdict. Storms, a former employee of Goodyear sued Goodyear for wrongful discharge and breach of an implied contract of employment. Storms alleges that certain written policies of Goodyear formed the basis of an implied contract of employment. At the trial of the case, Goodyear moved for a directed verdict at the end of plaintiff's case and again at the close of the evidence, arguing that as a matter of law there was no implied contract of employment. The Court denied Goodyear's motion and submitted the action to the jury subject to a later determination of the legal questions raised in the motion.[1] The jury returned a verdict for the plaintiff in the amount of $20,000.00. These motions followed.

For the reasons stated herein, Goodyear's motion for a judgment notwithstanding the verdict is granted. Further, the Court conditionally rules that Storms' motion for a new trial is denied.[2]

## FACTS

In September, 1988 Storms was demoted from Assistant District Manager in Birmingham, Alabama, to a store manager position in Florence, South Carolina. Subsequently, Storms submitted a letter of resignation in January, 1989. Storms contends that he was constructively discharged from his employment at Goodyear because of certain conditions that existed at the Florence store.

In this action, Storms claims that Goodyear breached an implied contract of employment by demoting Storms and then constructively discharging him. Storms alleges that two separate documents created an implied contract of employment: (i) Goodyear's Recruiting, Interviewing and Hiring Guide and (ii) a memorandum sent to Storms describing Goodyear's Annual

---

1. Rule 50 *Fed.R.Civ.P.* provides "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion."

2. Rule 50(c)(1) *Fed.R.Civ.P.* requires the Court to conditionally rule on the motion for a new trial by determining whether it should be granted if the judgment notwithstanding the verdict is thereafter vacated or reversed.

Employee Individual Performance Review Program.

The Recruiting, Interviewing and Hiring Guide was sent to Storms in his capacity as a store manager. It contains a section entitled "Discipline" that provides in part:

Except in cases such as theft, fraud or outrageous acts of insubordination which will probability warrant immediate discharge ... the disciplinary procedure used must be one that satisfies constitutional due process. That is, a process that:

1. Notifies the employee of the employer's expectations, and

2. Provides that employee an opportunity to improve or correct their behavior.

A typical procedure would be to:

1. Initially talk to the employee about a problem the Manager perceives ...

2. If no improvement is made the next step is to again privately discuss the performance problem with the employee ...

3. The next step, assuming no improvement, is a disciplinary suspension (usually 3 days without pay) ...

4. If there is still no improvement, discharge may be appropriate ...

*The procedures mentioned above are purposely stated in general terms* and apply to non-union employees (Union employees usually have a specific disciplinary procedure spelled out in their labor contract) (emphasis added).

Storms argues that his demotion and alleged constructive discharge were "discipline," within the parameters of the above quoted provisions from the Recruiting, Interviewing and Hiring Guide. Storms presented evidence that Goodyear did not follow the 4-step procedure outlined when Storms was demoted.

Storms also asserts that Goodyear's annual evaluation process created an implied contract. Goodyear conducted what it calls Annual Employee Individual Performance Appraisal Reviews for all its employees. Generally this evaluation process was known as the 20/60/20 plan. Under this system, employees which were evaluated in the top twenty percent were given opportunities for promotion. Employees in the bottom twenty percent were "not promotional." Storms as Assistant District Manager received a memorandum dated November 30, 1987 containing guidelines for appraising and peer-grouping personnel. This memorandum provides in part:

The potential rating will be of importance regarding promotional consideration. *Again this year, absolutely no one with a Y-2 rating will be eligible for promotion.* Do not consider an employee as Y-2 just because they cannot relocate. Further, your peer group ranking based on performance will continue to be of special significance to determine order of release or layoff during times of retrenchment provided you have proper documentation. (emphasis in original)

Storms was also evaluated under this appraisal review system in April of 1988, prior to receiving a demotion. Storms received a rating higher than a Y-2 and he was not ranked last among his peers. In September 1988 Storms was demoted to store manager during an alleged reorganization at Goodyear. Storms testified that he was the only one in his peer group to be demoted. Storms argues that his demotion violated the provisions of the Appraisal Review system because Goodyear demoted Storms and did not demote persons in Storms' peer group ranked lower than him.

Goodyear also distributed a Field Personnel Manual to Storms. The Field Personnel Manual is a comprehensive document containing Goodyear's employment policies relating to a wide range of topics, including discharge. The field personnel manual also contains a provision which specifically states that an employment contract is neither intended nor should be construed from its terms.[3] Storms does not rely on any

**3.** Under South Carolina law, an employer who wishes to continue operating under the employment at will doctrine can insert a conspicuous disclaimer in the policy manual. The question of whether the disclaimer is conspicuous is a question for the court to determine. *Nettles v. Techplan Corp.,* 704 F.Supp. 95 (D.S.C.1988). This Court ruled at trial that as a matter of law

provision in the Field Personnel Manual in support of his claim of an implied contract of employment.

## MOTION FOR JNOV

When ruling on a motion for judgment notwithstanding the verdict, the trial court must consider the record as a whole and in the light most favorable to the party opposed to the motion. If there is evidence opposed to the motion of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the non-moving party, the motion should be denied. *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891 (4th Cir. 1980). However, where the non-moving party has the ultimate burden of proof and fails to produce sufficient evidence in support of an essential element of the cause of action, then judgment should be rendered in favor of the moving party as a matter of law. *See Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making this determination, the court does not weigh the evidence or assess the credibility of the witnesses. *Hamilton v. 1st Source Bank*, 895 F.2d 159, 162 (4th Cir. 1990).

■ Construing all the evidence in the record in the light most favorable to Storms, this Court concludes, as a matter of law, that Storms has failed to present sufficient evidence from which a reasonable jury could find the existence of a contract of employment.

Under South Carolina law, absent specific exceptions, employment is at-will and the employee can be discharged for any reason or no reason at all. *Ludwick v. This Min-*ute of Carolina, Inc., 287 S.C. 219, 337 S.E.2d 213 (1985); *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 278 S.E.2d 607 (1981). In *Small v. Springs Indus.*, 292 S.C. 481, 357 S.E.2d 452 (1987) the South Carolina Supreme Court recognized that the at-will employment relationship can be modified by a unilateral contract. In *Small* the court held that "a jury can consider an employee handbook along with other evidence, in deciding whether the employee had a limiting agreement on the, at-will employment status." 292 S.C. at 486, 357 S.E.2d at 455.[4]

*Small* was decided on contract principles. The South Carolina Supreme Court subsequently stated, "In *Small* we recognized no new right or cause of action ... *Small* involved an action for breach of contract." *Toth v. Square D. Co.*, 298 S.C. 6, 377 S.E.2d 584 (1989). The court in *Small* cited the leading case of *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980) for the proposition that in a typical employment agreement, the employee's service is sufficient consideration to support an employer's promise to only discharge the employee for just cause. The court stated:

> The employment agreement in this case, like most employment agreements, was a unilateral agreement. Springs made an offer or promise to hire Small for specified benefits and wages. Small accepted this offer by performing the act on which the promise was impliedly based. Springs promise constituted the terms of the employment agreement. Small's action or forbearance in reliance on Spring's promise was sufficient consideration to make the promise legally binding

---

the language of the disclaimer is not conspicuous.

This disclaimer is not in bold print nor is it in print of a different color. The language is not contained on a separate page and is not set apart from other language on the page where it is located. Furthermore, the language is not found on the first page of the document. Although the page that the language is located on is enumerated "Section I, page 1" this is after the "Forward" and "Index" sections, approximately eight (8) pages after the title page.

**4.** In addition to a contractual limitation on the right to discharge an employee discussed in *Small*, South Carolina courts have also recognized a cause of action for "wrongful discharge" where the discharge violates a clear mandate of public policy. *See Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985) (wrongful discharge cause of action allowed where employer required at-will employee to refuse to honor a subpoena to appear before the South Carolina Employment Security Commission as a condition of continued employment.)

866

... *See Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 630–631, 292 N.W.2d 880, 900 (1980) (Ryan, J., concurring).

In *Toussaint,* the Michigan Supreme Court relied on a legal theory separate from the unilateral contract theory discussed in *Small* to reach its conclusion that the employer limited its right to discharge an employee except for cause by policies contained in an employment handbook. The Michigan court concluded "it is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation 'instinct with an obligation.'" *Toussaint,* 292 N.W.2d at 891. *See also Bankey v. Storer Broadcasting Co.,* 432 Mich. 438, 443 N.W.2d 112 (1989) (The benefit to the employer of promoting such an environment, rather than the traditional contract-forming mechanisms of mutual assent or individual detrimental reliance, gives rise to a situation that is instinct with obligation.)[5]

While the South Carolina Supreme Court relied on the unilateral contract theory discussed in *Toussaint,* it did not expressly adopt the analysis espoused by the Michigan courts that an employer, by issuing an employee handbook containing certain policies, creates an environment that gives rise to a situation that is instinct with obligation. It would be nothing short of extraordinary for the South Carolina courts to intend to change basic contract analysis in the employment context without discus-

sion. Hence, this Court reads *Small* to allow employment handbooks, along with other evidence, to form the basis of a contract under basic principles of contract law.[6]

Storms alleges that Goodyear breached an implied contract of employment. An implied contract is an agreement manifested by conduct; whereas an express contract is manifested by words, oral or written. Regardless of whether the contract is alleged to be express or implied, there must be proof of mutual assent and valid consideration. Mutual assent is a meeting of the minds evidenced by an offer and acceptance to all essential terms of the contract. *See Hackler v. Earl Wiegand Real Estate, Inc.,* 295 S.C. 396, 368 S.E.2d 686 (Ct.App.1988); *International Shoe Co. v. Herndon,* 135 S.C. 138, 133 S.E. 202 (1926).[7] Storms must present evidence of each essential element of the alleged contract. Failure to prove any one element is fatal to Storms' claim and a jury verdict in his favor will not stand. *W.E. Gilbert & Associates v. The South Carolina Nat. Bank,* 285 S.C. 421, 330 S.E.2d 307 (Ct.App. 1985).

While the services performed by Storms for Goodyear could provide the consideration to support his claim of an employment contract, *Small v. Springs Indus.,* 292 S.C. 481, 357 S.E.2d 452 (1987), there was not any evidence presented from which a reasonable jury could find mutual assent. Storms did not receive any oral assurances that Goodyear intended to extend Storms an offer of an employment contract by issuing the policy directives cited by Storms. Moreover, the language of the Goodyear documents containing the subject policy directives do not express an intent to create a binding agreement.

5. For a general discussion of the various legal theories used to analyze whether there exists a contractual limitation on the employment or at-will status based upon personnel policy manuals see Strong, *Personnel Policy Manuals as Legally Enforceable Contracts,* 29 Washburn L.J. 368 (1990).

6. This conclusion is further supported by the South Carolina Supreme Court's decision in *Toth v. Square D. Co.,* 298 S.C. 6, 377 S.E.2d 584

(1989) holding that the *Small* case shall be applied retroactively because it did not create a new legal right.

7. In a bilateral contract there must also be mutuality of obligation. However, in an unilateral contract there is no requirement for mutuality of obligation; there is only one promisor and one promisee for whom the contract creates a legal enforceable right. *Toth v. Square D. Co.,* 712 F.Supp. 1231, 1235 (D.S.C.1989).

The annual appraisal review program and the disciplinary guide are not couched in mandatory terms and do not contain language that specifically limits Goodyear's right to demote or terminate Storms without cause. Non-mandatory and permissive language is evidence that the employer did not intend to create a binding agreement. *See Allan v. Sunbelt Coca–Cola Bottling Co.*, 4 IER Cases 1456 (S.C. Common Pleas, J. Brown 1989); *Mursch v. Van Dorn Co.*, 851 F.2d 990 (7th Cir.1988).

For example, the memorandum describing the appraisal review program merely indicates that an employee's year-end appraisal and ranking "will continue to be of special significance to determine the order or release or lay off during times of retrenchment." This document does not mandate that employees are to be released or laid off in the order of appraisal rankings. Moreover, the language of the appraisal guidelines do not specifically address situations where an employee is demoted, as Storms was. Likewise, the 4–step procedure outlined in the disciplinary provision of the Recruiting, Interviewing and Hiring Guide is only an example of how a manager of Goodyear *may* address disciplinary issues involving employees under the manager's supervision. The guideline further states that the procedures are "purposely stated in general terms."

█ There is also not any evidence from which a reasonable jury could imply from Goodyear's conduct that it intended for these policy directives to create a binding contract. Implication of mutual assent based on conduct must be a reasonable deduction from all the circumstances and relations of the parties. 17 C.J.S. *Contracts* § 4 at p. 560. The fact that the appraisal review memorandum and the disciplinary provision contained in the Recruiting, Interviewing and Hiring Guide were provided to Storms is insufficient to satisfy the element of mutual assent. Unlike the employee handbook in *Small,* the documents cited by Storms were not distributed to all employees. These documents were provided to managers, such as Storms, as policy directives in dealing with employees. There was no evidence presented that would support a reasonable implication that Storms was intended to receive added job security over employees of lower rank merely because Storms, in his role as part of management, received these policy directives.

█ The fact that Goodyear did not intend for the policy directives contained in the documents cited by Storms to create a contract is evidenced by the disclaimer contained in the Field Personnel Manual. As noted above, this manual is a comprehensive document governing employment at Goodyear. The disclaimer provision provides: "The provisions contained in this manual are not intended to create nor to be construed to constitute a contract or implied contract of continued employment or future employment with any employee or employees." A contract may not be implied against the express declaration of the person to be charged. 17 C.J.S. *Contracts* § 4 at 562. *See Bannon v. Knauss,* 282 S.C. 589, 320 S.E.2d 470 (1984) (Interpretation of contract is to be governed by the objective manifestation of the parties assent at the time the contract is allegedly made; it does not depend upon subjective, after the fact meaning, one party assigns to it.)

Storms argues that he is entitled to rely upon the disciplinary provision and the annual employee appraisal program because there were no similar disclaimers affixed to each separate document containing these policy directives. If this Court were to adopt Storms' arguments, then an employer would be required to place a disclaimer on every document it publishes containing employment policy directives even when these directives were directed only to management personnel. Such a ruling would unfairly limit an employer's ability to issue policy directives and there is nothing in the law of South Carolina which would impose such a requirement on employers.

█ While this Court recognizes that in some circumstances an employer may be bound by its policy statements under a theory of promissory estoppel, this is not

such a case. Under promissory estoppel, a promisor may be bound to a promise which the promisor should reasonably expect to induce action on the part of a third party and if injustice can be avoided only by enforcement of the promise. Restatement 2d, *Contracts*, § 90. A determining factor in deciding whether to enforce a promise under the theory of promissory estoppel is the reasonableness of the promisee's reliance, Restatement 2d, *Contracts*, § 90 comment b.

Storms' purported reliance on the year-end appraisal review guide and the disciplinary provision contained in the Recruiting, Interviewing and Hiring Guide is, as a matter of law, unreasonable. There is no evidence that Goodyear intended to treat Storms preferentially over lower ranked employees merely because he received the policy directives to management describing methods of dealing with employees. Additionally Storms did not present any evidence that Goodyear intended to create a contractual relation with him, particularly in light of Goodyear's express declaration that it did not intend to create an employment contract in its comprehensive employment manual. Based on these facts, no reasonable employee could have justifiably relied upon the policy directives contained in the memoranda cited by Storms.

Since Storms did not present sufficient evidence from which a reasonable jury could find that Goodyear manifested its assent to enter into a contract of employment with Storms and because Storms' purported reliance on the policy directives was, as a matter of law, unreasonable, this Court grants Goodyear's motion for a judgment notwithstanding the verdict.

## MOTION FOR NEW TRIAL

Plaintiff moved for a "new trial nisi additur" arguing that the damages awarded by the jury are not supported by the evidence. Goodyear did not file a motion for a new trial. This Court addresses plaintiff's motion for a new trial to assist the appellate court should the judgment notwithstanding the verdict be vacated or reversed. *See Rule 50(c) Fed.R.Civ.P.*

■ Plaintiff initially seeks an "additur" or addition to the damages award to extend the award to $170,000.00. However, the Seventh Amendment prohibits the utilization of additur where the amount of damages is disputed. *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935). Because additur is not permitted, plaintiff's motion will be limited to a motion for a new trial.

■ A motion for a new trial should not be granted unless the verdict is against the clear weight of the evidence or is based on evidence that will result in a miscarriage of justice. *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888 (1980). Plaintiff's theory of breach of contract was based on two separate policies, Goodyear's disciplinary policy contained in the Interviewing, Recruiting and Hiring Guide and the annual appraisal review program. There is sufficient evidence to support the jury's award under either theory.

The jury could have found that Storms was demoted and constructively discharged in breach of an employment contract based on the annual evaluation process. The annual evaluation process would only create a contract of employment for one year. Plaintiff presented evidence of lost wages and benefits, loss of the use of the company car, moving expenses, and other incidental costs relating to his relocation from which reasonable jury could find damages in the amount of $20,000.00.

Furthermore, if the jury found that Storms was constructively discharged in breach of a contract based on the disciplinary policy contained in the Recruiting, Interviewing and Hiring Guide, the $20,-000.00 damages award is likewise supported by the evidence. Plaintiff was receiving an annual salary of $38,000.00. The jury could have reasonably determined from the evidence that Storms' net loss would only be $20,000.00 after reductions for mitigation earned through other employment. *See Small v. Springs Indus.*, 300 S.C. 481, 388 S.E.2d 808 (1990).

Under either theory presented by the plaintiff, there was sufficient evidence

from which a reasonable jury could find damages in the amount of $20,000.00. Therefore Storm's motion for a new trial is denied.

IT IS SO ORDERED.