**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOAN M. TOLLEY,
Plaintiff-Appellant,

v.

HEALTH CARE AND RETIREMENT

No. 96-2094

CORPORATION, INCORPORATED, d/b/a
HCR West Nursing Center,
Incorporated,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
G. Ross Anderson, Jr., District Judge.
(CA-95-1510-6-3)

Argued: October 31, 1997

Decided: January 21, 1998

Before MURNAGHAN, WILKINS, and NIEMEYER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Edwin Lake Turnage, Travelers Rest, South Carolina, for
Appellant. James Derrick Quattlebaum, HAYNSWORTH, MARION,
MCKAY & GUERARD, L.L.P., Greenville, South Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Joan M. Tolley, a licensed practical nurse, was discharged by her employer on October 20, 1994, after Tolley filled in a patient's chart for a colleague, making the chart false. At the time, Tolley was 51 years old. She filed this action under the Age Discrimination in Employment Act, 29 U.S.C. § 636, contending that her employer discriminated against her because of her age or retaliated against her because she "took up for" a 51-year-old co-employee who had been discharged several months earlier. Tolley also contended that her discharge breached a contract of employment under South Carolina common law. The district court granted the employer's motion for summary judgment, and we affirm.

I

Since 1988, Tolley had been employed by Health Care and Retirement Corp., Inc. ("HCR") at its Oakmont West facility in Greenville, South Carolina. In March 1994, she received a copy of an HCR handbook which sets forth employees' rights and obligations. At the time that Tolley received the handbook, she signed an acknowledgment which indicated that she had received and read the handbook and which explained the nature of her employment relationship. It included an acknowledgment that Tolley was an "at-will employee" and that the employee did not have a contract of employment unless it was in writing on a document signed by both her and the president of HCR. Tolley contends that she did not read the text of the signed acknowledgment because she was not given an opportunity to peruse it. She indicates, moreover, that she would not have understood the acknowledgment had she read it.

Up until June 1994, Tolley had encountered no problems at HCR. Indeed, only the month before she received an award as the employee

2

of the month. In June, however, HCR fired Tolley's supervisor, Mary Lamm, who was 51, and replaced her with Barbara Daniel, a younger woman. Tolley publicly protested Lamm's discharge, and HCR seems to have experienced a certain amount of employee tension as a result of the appointment of Daniel.

In August 1994, Daniel promoted Tolley to unit manager. Daniel gave Tolley a performance plan specifically designed for Tolley in her new position. Tolley claims that the tasks and standards outlined by this performance plan were impossible to meet. A few weeks later, Tolley resigned from her position as unit manager, citing chronic stress disorder and deteriorating health. As unit manager, Tolley was given a 29 cent per hour raise, bringing her total wage to $11 per hour. According to her, when a 22-year-old was elevated to unit manager after Tolley's subsequent discharge in October, the younger woman allegedly was to receive $13.10 an hour.

After resigning as unit manager, Tolley alleges that Daniel criticized her constantly and was reluctant to grant her leave. She contends that younger employees were not similarly criticized nor did they encounter similar resistance to requests for time off. On September 8, Tolley met with her supervisors about her performance and attendance problems and left the meeting in tears. She alleges she was told that if she left the meeting to resolve herself, she would be fired.

In early October, due to an administrative error, Jackie Anderson, also a nurse at Oakmont West facility, failed to give a patient required medication and failed to indicate that she had done so on the patient's chart for four days. During the same period, however, Tolley continued to administer the medication to the patient when she was on duty. On October 11, when Tolley discovered that the patient's chart was incomplete for four days, failing to reveal that Anderson had administered the required medicine, Tolley initialed the chart for Anderson, thereby indicating that the patient had been given the medication by Anderson. Tolley then called Anderson, who ratified Tolley's initialing the chart for her. Tolley claims that she initialed the chart for Anderson because she had thought that Anderson had given the patient the medication and that in those circumstances it was routine for nurses to fill in charts for other nurses. She did not realize, however, that Anderson had not administered the medication. Accord-

3

ingly, as it turned out, Tolley's entries created a false medical record for the patient.

When HCR supervisors first learned of this situation, they informed Tolley and Anderson that they would receive warnings for their actions. But on October 20, 1994, each was given a choice of resigning or being fired. Anderson, who was 42 years old, elected to resign; Tolley did not elect to resign and was fired. Sometime after October 20, Daniel indicated to Anderson she had done nothing wrong. Furthermore, the director at Oakmont West told her that she could come back to work at Oakmont West sometime in the future. Tolley contends that other nurses at Oakmont West filled in blanks on patients' charts and had engaged in other poor record-keeping practices, but that no one else was fired for these practices.

Tolley filed suit in a South Carolina state court, alleging age discrimination, retaliation, slander, breach of contract, and breach of contract accompanied by a fraudulent act. HCR removed the action to federal court where the slander claims were subsequently dropped. The district court thereafter entered summary judgment for the employer, concluding that Tolley had failed to make out a prima facie case of discrimination; that no employment contract ever existed; and that Tolley had defaulted her retaliation claim because she did not exhaust her administrative remedies.

II

To establish a prima facie case of discrimination in the enforcement of employee disciplinary measures under the ADEA, the plaintiff must show: (1) that she is a member of the class protected by the ADEA; (2) that the protected conduct in which she engaged was comparable in seriousness to misconduct of employees substantially younger than she; and (3) that the disciplinary measures enforced against her were more severe than those enforced against those other employees. Cf. Cook v. CSX Transp. Corp. , 988 F.2d 507, 511 (4th Cir. 1993) (applying test to Title VII); see also O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. 1307, 1310 (1996). Once a plaintiff has made out a prima facie case that disciplinary measures were discriminatorily taken, the employer must articulate a "legitimate, nondiscriminatory reason" for the adverse employment action.

4

See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Finally, the plaintiff must rebut the defendant's proffered reason with evidence that the employer's reason was a pretext, and that the discipline was instead imposed for discriminatory reasons. Id.; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, 515 (1993).

In this case, we agree with the district court's conclusion that Tolley had not sufficiently supported her claim that she was treated more harshly than younger employees. Tolley's case rests primarily on the affidavits of three of her co-workers. The first affidavit, given by Anderson, states that Anderson, who was 42 years old but still substantially younger than Tolley, was told that she would be able to come back and work at HCR in the future. Tolley was not so told. The second affidavit is from Estelle Edwards, stating that, on one previous occasion at HCR forms were falsified to indicate that unadministered medication had been administered. The affidavit also states that Daniel was "aware that many nurses were filling in blanks" on patient charts. The third affidavit, given by Rhonda Hooper, states that the performance plan given to Tolley as unit manager was impossible to meet and that Beth Warner, who became unit manager after Tolley had been discharged, was to receive $13.10 an hour, over $2 an hour more than Tolley had been paid when she held the unit manager job several months earlier. Hooper also states that Daniel often filled in blanks for other nurses and that Tolley was treated more harshly than other nurses, "particularly the nurses under the age of forty," for her alleged tardiness and misconduct.

The first affidavit does not advance Tolley's position. Although Tolley and Anderson were both involved in the same conduct of completing false records, they were also both given the option to resign or be fired for that act. Thus, their discipline was virtually identical. Otherwise, however, their circumstances differed. While Anderson elected to resign, Tolley refused to resign and therefore was fired. Tolley was the person who created the false record, and Anderson's input is ambiguous. And finally Tolley had been cited for tardiness and attendance problems in the previous months. While Anderson may have been told that she might be rehired at some later date, such a speculative disparity, in these circumstances, is not enough as a matter of law to constitute differential treatment. The fact remains

5

that in response to the creation of the false charts, HCR took identical action with respect to both Tolley and Anderson.

The Edwards' affidavit indicates that a falsification of forms took place on at least one other occasion, but it does not indicate how or if the employees who falsified the records were disciplined. It also fails to state the names or ages of the persons falsifying the records. Thus, no inference that younger workers were treated less harshly than older workers can be drawn from this affidavit.

Finally, Hooper's affidavit provides Tolley with little or no support for similar reasons. First, even though Hooper states that Tolley's performance plan was impossible to complete, the affidavit does not compare her plan with those given to other, younger employees. Second, the affidavit's statement about Daniel filling in blanks for other nurses does not indicate that Daniel falsified any records. Tolley was fired for creating a false record, not for filling out blanks without authorization. Third, Hooper's statement that Tolley and Warner were paid different rates does not compare similar jobs at the same period. Tolley's resignation from the unit manager post may have required greater compensation for the position, or Warner may have been given more responsibility. The record is blank on these issues. And finally, Hooper's statement that Tolley was treated harsher than younger workers, while relevant, is excessively general. It describes no particular parties or instances. A party cannot make out a prima facie case of discrimination by producing an affidavit that states, at a high level of generality and without supporting facts, simply that older workers are treated more harshly than younger employees.

In short, we conclude that a reasonable jury could not return a verdict favorable to Tolley for age discrimination on these facts.

III

Tolley also contends that HCR retaliated against her because she publicly protested the discharge of her former supervisor, Lamm, who was 51. The only evidence that Tolley advances to support this claim, however, is the single fact that Tolley was discharged four months later. "Temporal proximity . . . is simply too slender a reed on which to rest a . . . retaliatory discharge claim." Wagner v. Wheeler, 13 F.3d

6

86, 91 (4th Cir. 1993) (stated in the context of a 42 U.S.C. § 1983 discrimination claim); see also Hughes v. Bedsole , 48 F.3d 1376, 1387 (4th Cir. 1995).

IV

Tolley also contends that HCR breached a contract created when it issued its employee handbook to her. She contends that termination of employment for "falsifying" as used in the handbook is ambiguous as to whether it requires scienter, and therefore that the interpretation of the contract should be submitted to the jury.

The substance of Tolley's contract claim is governed by South Carolina law. In South Carolina, "a contract for permanent employment of an indefinite duration, which is not supported by any consideration other than the obligation of service to be performed on the one hand and wages to be paid on the other, is terminable at the will of either party." Satterfield v. Lockheed Missiles & Space Co., 617 F. Supp. 1359, 1361 (D.S.C. 1985). In the right circumstances, however, an employee handbook can create a binding employment contract, see Small v. Springs Indus., Inc., 357 S.E.2d 452, 454-55 (S.C. 1987), and if an employer wishes the handbook not to form the basis of a contract, it must include a conspicuous disclaimer in the handbook. See id.; Marr v. City of Columbia, 416 S.E.2d 615, 616 (S.C. 1992); Johnson v. First Carolina Financial Corp., 409 S.E.2d 804, 806 (S.C. Ct. App. 1991).

In this case, the employee handbook contained an acknowledgment page that specifically included a disclaimer making clear that employees were at-will employees, that they had no employment security, and that no employee had an employment contract with HCR unless the president of HCR agreed to the contract in an instrument signed by the president. Tolley signed this acknowledgment page, indicating that she had received the handbook and had read it. The fact that the disclaimer was contained on a separate page that was to be severed from the handbook, that was to be signed by the employee, and that was to be included in the employee file made it, as a matter of law, conspicuous. The whole purpose for having Tolley sign the disclaimer was to bring to her particular attention that the employment was at-will and that the handbook did not create a contract. This, we con-

7

clude, adequately addresses South Carolina's requirement that an employer's disclaimer be "conspicuous."

Tolley contends, however, that even if the disclaimer disavowed contractual rights, it did not do so in her case because she did not have a chance to peruse and understand the disclaimer that she signed. In South Carolina, however, "one who is capable of reading and understanding but fails to read a contract before signing is bound by the terms thereof." Sims v. Tyler, 281 S.E.2d 229, 230 (S.C. 1981). The very first line of the acknowledgment she signed states, "I have received a copy of the HCR Employee Handbook which includes Rules for Your Protection and have read it carefully." She cannot now disavow that document by claiming she did not read it.

Accordingly, we affirm the summary judgment entered by the district court.

AFFIRMED

8