UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

W. RAY WARD,
Plaintiff-Appellant,

v.                                                                      No. 98-2153

ELI LILLY AND COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(CA-97-418-2-23AJ)

Submitted: February 23, 1999

Decided: March 19, 1999

Before ERVIN, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jon Lawrence Austen, PRATT-THOMAS, PEARCE, EPTING &
WALKER, P.A., Charleston, South Carolina, for Appellant. Sue C.
Erwin, Jim O. Stuckey, II, William C. Wood, Jr., NELSON, MUL-
LINS, RILEY & SCARBOROUGH, Columbia, South Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

W. Ray Ward appeals the district court's order granting Appellee's motion for summary judgment and dismissing his claim arising under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. § 621-634 (West 1999), as well as his related state claims. We have reviewed the record and the district court's opinion accepting in part and rejecting in part the report and recommendation of the magistrate judge. See Ward v. Eli Lilly & Co., No. CA-2:97-0418-23 (D.S.C. July 2, 1998). Finding no error, we affirm.

Ward was employed by the pharmaceutical manufacturer Eli Lilly & Co. (Lilly) from 1973 until his dismissal from the company in 1996. During his tenure at Lilly, Ward served exclusively in the capacity of sales representative; his responsibilities included meeting with local physicians to recommend his company's products and distribute free samples. This process was highly regulated both by the Prescription Drug Marketing Act (PDMA) 21 U.S.C.A.§ 331, 333, 353, 381 (West 1972 & Supp. 1998), and internal Lilly procedures.

Ward's troubles with Lilly began in March 1995 when he failed a company audit of his pharmaceutical sample locker. As a result, Lilly placed Ward on "Sample Accountability Enforcement Level A"[1] and directed him to better regulate the samples under his control. In December 1995 Ward failed a second audit of his sample locker as a result of several violations of the PDMA. Ward was then placed on "Sample Accountability Enforcement Level B." In February 1996, Ward's supervisor, Stan Bialkowski, issued a letter placing Ward on

_____

[1] Sample Accountability Level A is the first level of enforcement in Lilly's Sample Accountability program. An employee may be moved to a higher level "due to detected trends or due to the receipt of other relevant information." (JA at 133).

2

probation for six months. During this probationary period Ward was told his "performance must be completely satisfactory, or you may be subject to immediate dismissal." (JA at 489). In addition to the sample accountability discrepancies, the letter also cited deficiencies in Ward's team work, communication, and overall business acumen. In March 1996, Bialkowski sent Ward a follow up notice in which he indicated: "Ray, you are not meeting [the] expectations of your probation. Your performance needs to change immediately." (JA at 492). Following a meeting between Ward and Bialkowski in April 1996, Ward was issued yet another letter indicating that his performance was unacceptable. (JA at 493-94). Finally, as part of the ongoing investigation into Ward's sample accountability, Lilly discovered a series of apparent forgeries on some of the physicians' signature cards that Ward had submitted in support of his sample accountability. Thereafter, on June 12, 1996, Lilly fired Ward; the instant suit followed.

Ward asserted his claim under the ADEA. He additionally raised state claims of breach of contract, breach of contract accompanied by fraudulent act, and promissory estoppel. Finding that there were no material facts in dispute and that Ward had failed to make his prima facie case, the district court granted Lilly's motion for summary judgment.

We review de novo a district court's grant of summary judgment. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when the record considered as a whole could not lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A party moving for summary judgment must show the absence of evidence to support his opponent's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). However, the non-movant bears the burden of demonstrating the presence of a contested issue of fact. The non-movant must point to specific evidence establishing a triable dispute, and cannot rely upon bare allegations. See Anderson, 477 U.S. at 248-49; Fed. R. Civ. P. 56.

To establish a claim under the ADEA, Ward was required to show that: (1) he was in the age group protected by the ADEA; (2) he was discharged or demoted; (3) at the time of his discharge or demotion,

3

he was performing his job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful age discrimination. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 310-12 (1996). The proof scheme originally formulated for Title VII cases in McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973), applies in ADEA cases. See Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998). If a plaintiff establishes his prima facie case, the burden of production shifts to the defendant, who may rebut the presumption by providing a legitimate non-discriminatory rationale for the adverse action. The plaintiff may then attempt to disprove this rationale as mere pretext for discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-56 & n.10 (1981); McDonnell Douglas, 411 U.S. at 802. The burden of proving discrimination remains at all times on the plaintiff. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 507 (1993).

We need not evaluate whether Ward established a prima facie case because it is abundantly clear that even if he did so, Lilly came forth with a legitimate, non-discriminatory reason for his discharge. Specifically, Ward repeatedly violated Lilly's procedures and federal law for more than a year preceding his dismissal.[2] Ward did not present any evidence that Lilly's reason for terminating him was pretextual. Accordingly, the district court was correct in its determination that Lilly's termination of Ward did not implicate the ADEA.[3]

_____

[2] Although Ward asserts that Lilly's grounds were a mere pretext for his dismissal, we find this argument unpersuasive. Ward points to the statements of another Lilly sales representative based in Kansas City who allegedly told Ward in 1993 that his supervisors (the Kansas City supervisors) had told him that Lilly management was trying to "get rid of older employees." Because these statements were remote in time, as well as remote from Ward's own supervisors and territory, the district court correctly determined that they were not relevant.

[3] Ward presented evidence to the district court regarding the allegedly forged signatures of physicians who Ward claims received missing samples. Although the evidence could have been interpreted as exculpatory to Ward, it came to light long after Lilly had terminated Ward's employment. Therefore, as the district court properly noted, the fact that Ward may eventually be cleared of some of the accusations of falsified records "does not change the conclusion that the firing itself was non-discriminatory at the time that it occurred." (JA at 46) (citing Moore v. Eli Lilly & Co., 990 F.2d 812, 816 (5th Cir. 1993)).

4

We also find no error in the district court's decision to exercise its supplemental jurisdiction over Ward's remaining state law claims. See 28 U.S.C. § 1367 (1994). Ward based his breach of contract and promissory estoppel claims on several alleged statements of Lilly representatives as well as his employee handbook. (Brief of Appellee at 25-26). However, these statements fall far short of the language required to create a binding employment contract. See Storms v. Goodyear Tire & Rubber Co., 775 F. Supp. 862, 867 (D.S.C. 1991). To the contrary, Ward was on actual notice that his employment was "at will" when he signed a document prior to beginning work with Lilly in 1973 that specifically stated "EMPLOYMENT CAN BE TERMINATED BY WRITTEN NOTICE OF EITHER PARTY." (JA at 381-82) (capitalization in original). Considering this evidence, it is clear that the district court was correct in awarding summary judgment for Lilly on Ward's remaining state law claims.

We therefore affirm the order of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5